Rickey, et al. v. Tenbroeck, et al.

————o————

WILLIAM C. RICKEY, *et al.*, Defendants in Error, *vs.* WILLIAM TENBROECK, *et al.*, Plaintiffs in Error.

1. *Sale—Breach of contract of—Measure of damages.*—In an action by the vendor against the vendee, for the non-acceptance of property sold or contracted for, the measure of damages is the difference between the price agreed upon and the market value of the property at the time and place of delivery. And the property may be resold at such time and place, and notice being given to the original vendee, the price brought at the re-sale may be treated as determining the market value.

2. *Statute of frauds—Verbal contract of sale at subsequent day—Treated as an offer, when—Part delivery.*—Where, under a verbal contract entered into for the sale of certain head of cattle, a part of them were to be delivered in one week, and the remainder in subsequent instalments, from time to time, as the vendee might require, *held*, that although the contract was, when made, void under the Statute of Frauds (Wagn. Stat. 57, § 6), it was nevertheless good as a proposition touching the price; and the delivery and acceptance of the first instalment, at the time named, without any change of terms and under the proposition or offer, made it binding and took the case out of the statute. The part delivery need not be made at the time of the contract.

3. *Defect of parties—Failure to take advantage of by demurrer or answer.*—In suit on a contract for the purchase price an instruction to the jury that if the articles were owned by plaintiffs in conjunction with others, they should find for defendant where the defect of parties was not taken advantage of by demurrer or answer, was properly refused. (Wagn. Stat. 1015, § 10.)

*Error to Cole Circuit Court.*

*E. L. Edwards & Son*, for Plaintiffs in Error.

I. All persons having a legal interest in the matter in controversy should have been made parties plaintiffs. (Wagn. Stat. 1870, §§ 2, 4, 6.)

II. The plaintiffs, if entitled to recover at all, could only recover the difference between the contract price and the market

value of the cattle in the market where they were to be delivered (in this case at the City of Jefferson). (Whitmore v. Coats, 14 Mo. 9; White vs. Salisbury, 33 Mo. 150; Koeltz vs. Bleckman, 46 Mo. 320.)

III. The delivery in this case was not such as to take the case out of the statutes of frauds. (White vs. Salisbury, *supra*; Harvey vs. The St. Louis Butchers Joint Stock & Ben. Assn., 39 Mo. 211.)

*Ewing, Smith & Pope*, for Defendants in Error.

I. In an action against a vendee for refusing to receive goods, the measure of damages is the difference between the price agreed upon and the market value of the goods at the time of breach, or the amount obtained on a re-sale. (Vanhorn vs. Rucker, 33 Mo. 391, and cases cited; Rush vs. Bradford, 15 Ala. 37; 20 Conn. 38; McNaugter vs. Cassally, 4 M. L. 530; Crooks vs. Moore, 1 Sandf. 297; 30 Wis. 290; Northrup vs. Cook, 39 Mo. 208, and cases cited; Koeltz vs. Bleckman, 46 Mo. 320; Hill. Sales, 422, 2d ed.)

II. The acceptance of part of the goods bought makes the contract good for the whole. (Gault vs. Brown, 48 N. H. 183; Marsh vs. Hyde, 3 Gray, 331; McNight vs. Dunlap, 1 Seld. 537; Ross vs. Welch, 11 Gray, 235; Gillman vs. Hill, 36 N. H. 311, 321; Phelps vs. Cutler, 4 Gray, 137; Scott vs. East Counties R. R. Co. 12 M. & W. 33; Gilliat vs. Roberts, 19 L. J. Ex. 410; 1 Chit. Cont. [10 Am. Ed.] 563; Tatum vs. Brooker, 51 Mo. 148.)

III. The question as to whether there was a delivery and acceptance of part of the property sold, was properly submitted to the jury. (4 Gray, 140; Hill. Sales, [2 ed.] p. 88; McCandlish vs. Newman, 22 Penn. 460; 20 Vt. 624; Harlan vs. Bidwell, 16 Ohio, 509; Phelps vs. Cutler, *supra*; Pratt vs. Chase, 40 Me. 269; Bass vs. Walsh, 39 Mo. 192; Frazier vs. Fredericks, 4 Zab. 162; Shaddon vs. Knott, 2 Swan, 358; Smith vs. Lynes, 1 Seld. 41; Sawyer vs. Nichols, 40 Me. 212; 14 Ala. 469; Stilwell vs. Bowling, 36 Mo. 310.)

IV. The first instruction asked on the part of defendants was properly refused. The statute of frauds does not require that a part of the property sold should be delivered to the vendee on the day the contract was made. A subsequent delivery and acceptance of a part of the property, under the-contract as found by the jury, is sufficient to take the case out of the statute. (McNight vs. Dunlap, 1 Seld. 537 ; Sprague vs. Blake, 2 Wend., and cases cited ; Vincent vs. Germond, 11 Johns. 283 ; Marsh vs. Hyde, 3 Gray, 331, and cases cited; Ross v. Welch, 11 Gray, 235 ; Gault vs. Brown, *supra*.)

V. The second instruction asked by defendants was properly refused. If the vendee unreasonably neglects or refuses to comply with conditions precedent to delivery, or to receive the goods on delivery, the seller may, after due delay and proper precaution, re-sell them, and hold the buyer responsible for the loss or deficit in the price. (Ingram vs. Mathien, 3 Mo. 209 ; Van Horn*. vs. Rucker, 33 Mo. 391; McLean vs. Dunn, 4 Bingh. 722 ; Martins vs. Adcock, 4 Ep. 251 ; Girard vs. Taggart, 5 S. & R. 19 ; Sands vs. Taylor, 5 Johns. 395.)

VI. The fourth instruction was very properly refused. A defect of parties plaintiff must be taken advantage of by either demurrer or answer, and if the objection be taken in neither manner, it will be deemed to have been waived. (Wagn. Stat. 1014, § 6 subdivision 4 thereof ; p. 1015, § 10 ; Gamble vs. Johnson, 9 Mo. 597 ; Reugger vs. Lindenberger, 53 Mo. 364 ; Kellogg vs. Malin, 62 Mo. 429.)

NORTON, Judge, delivered the opinion of the court.

This suit was brought in the circuit court of Cole county for the recovery of damages for an alleged breach of contract for the sale of fifty-two head of cattle. The petition alleges that plaintiffs, in May, 1873, sold defendants fifty-two head of beef cattle at four and a quarter cents per pound for fifty head, and four cents per pound for the other two head ; that it was agreed that the two cattle should be delivered to defendants the following week after the sale, and the other fifty in lots of fifteen per week, beginning about the first of June ensuing,

until all were received. It is further alleged that plaintiffs delivered and defendants received, in pursuance of said contract, the two head, and refused to receive the remainder of the lot of cattle sold.

The answer of defendant denied the allegations of the petition and set up the statute of frauds in bar of plaintiffs' right of recovery. Plaintiffs on a trial obtained judgment for $618, to reverse which the case is brought here by writ of error.

The evidence offered by plaintiffs tended to sustain the allegations of the petition as to the contract of sale of fifty-two beef cattle at the price stated thereon, the delivery to and acceptance by defendants of two of them, about one week after the sale was made, and the refusal of defendants to receive the remainder.

The contract was not reduced to writing, nor was anything paid by defendants at the time it was made, nor were any of the cattle received by defendants till about one week after the contract was made. The evidence further showed that after the refusal of defendants to receive fifty of the cattle, plaintiffs shipped part of them in July, 1873, to Chicago, and sold them in open market for $3\frac{3}{4}$ cents per pound, and about the last of July or first of August shipped the remainder to St. Louis and sold them from $1\frac{1}{4}$ to $2\frac{1}{2}$ cents per pound.

On the above state of facts the court, against the objection of defendants, gave the following, which was the only instruction given in the case: "If the jury believe from the evidence that plaintiffs and defendants entered into a contract whereby defendants were to receive of plaintiffs two head of cattle, at the farm of plaintiffs, at four cents per pound, and to receive fifty other head at Judge Carrington's under the same contract at four cents and a quarter per pound, and that in pursuance of said contract the plaintiffs delivered the two head of cattle to defendants, and were ready and willing to deliver the others, when defendants would receive them under said contract, and defendants declined to receive said fifty-two head of cattle; and that plaintiffs, afterwards made sale of them in open market in Chicago and St. Louis, and that the same were sold for a less sum than they had been sold to defendants, then the jury must find

for plaintiffs the amount of difference between what defendants agreed to pay plaintiffs therefor, and what they were actually sold for."

In an action by vendor against vendee, for the non-acceptance of property sold or contracted for, the measure of damages is the amount of actual injury sustained by vendor in consequence of such non-acceptance, which is usually the difference between the price agreed to be paid and the value of the property. In order to give the vendor complete remedy he must recover the difference between the agreed price and that at which he could sell at the time when the vendee was bound to receive and pay for the thing bought. (Dana vs. Fielden, 2 Kern [N. Y.] 40 ; Haskell vs. McHenry, 4 Call., 411 ; Whitmore vs. Coates, 14 Mo. 9 ; Orr vs. Bigelow, 14 N. Y. 556 ; Ballentine vs. Balmer, 46 Penn. 177 ; 2 Pars. 484 ; Allen vs. Jarvis, 20 Conn. 38 ; Mulloy vs. Ford, 29 Barb. 454.) In Hilliard on Sales, 422, the rule of damages is stated to be the difference between the agreed price and the market value of the goods at the time of the breach, or the amount obtained on a re-sale. The authorities referred to as sustaining the right of vendor to recover the difference between the contract price and the amount obtained on a re-sale, proceeds upon the theory that a re-sale of the property on notice to the vendee is a proper method of ascertaining the market value, and that when this method is adopted the re-sale should be made at the time of the breach or within a reasonable time thereafter. (Crooks vs. Moore, 1 Sandf. 297.) How is this market value to be ascertained, and in what place is the sale to be made ? We think it is the market value at the place the property is to be delivered, and if resold the sale should be in that place, and may be at public auction, especially if notice be taken. (Van Horn vs. Rucker, 33 Mo. 392 ; Story Sales, 314 ; Sands vs. Taylor, 5 John. 395.)

The case of Chapman vs. Ingram, (30 Wis. 290,) to which we have been cited, was an action to recover damages against the defendants for refusing to receive and accept 79,000 feet of lumber which was to be delivered at a certain mill at Eau Claire. After defendants refused to receive the lumber it was run to

Lansing, Iowa, and sold, and plaintiff recovered in the court below the difference between the contract price and what it sold for at that place, after deducting the necessary expenses of running the lumber there. In reversing the judgment the court says: "The lumber was to be delivered at Eau Claire. Selling the lumber at any place is only a convenient method of ascertaining the difference between the contract price and value of the lumber where it ought to have been accepted, but it is not the only means. The plaintiff might show by other evidence what the lumber was worth at Eau Claire, without resorting to a sale even there to test its value, but to move the lumber away for two or three hundred miles, and charge defendant with the increased risk and expense of a re-sale in a foreign market, is imposing on defendant a loss which the law does not authorize."

In the case at bar, according to the evidence, the breach of contract occurred about the 15th of June, 1873 ; the cattle were to be delivered at or near Jefferson City ; a part of them were shipped by plaintiffs about the middle of July to Chicago, a distant market in another State, and sold ; the remainder were shipped to St. Louis and sold ; and they were shipped without notice to defendants.

Rickey, one of the plaintiffs, in his evidence states that at the time defendants refused to receive the cattle, they were dropping in the market, and had then declined one-half cent per pound ; "that the difference between the price he sold them for and what defendants had agreed to pay, was sixteen dollars per head, after deducting expenses of shipping."

The measure of damages, contained in the instructions given for plaintiff, required the jury, if they found for him, to assess his damages at the difference between what defendant was to pay for them, and what they actually sold for in Chicago and St. Louis, notwithstanding the evidence of one of the plaintiffs showed that at the time defendants refused to receive the cattle and made a breach of his contract, they had declined but one-half cent per pound. The plaintiff's evidence certainly fixes a more just rule of damages in this case, when he establishes the value of the cattle at the time the breach took place, than is laid down in the in-

structions of the court, which virtually prohibited the jury from considering this fact, and required of them to take the price obtained for them in Chicago, a foreign market, at a sale made about a month after the breach, as conclusive evidence of the value of the cattle at the time of the breach.

The instruction, prohibiting (as it virtually did) the jury from considering the fact stated by plaintiff in his evidence that the cattle had depreciated one-half cent per pound below contract price, when defendants refused to accept them, deprived defendants of the benefits of this testimony, and for that reason it should not have been given.   As this view necessitates a reversal of the judgment the other point presented will be noticed.

It is urged by defendants' counsel that the contract sued upon is void under section 6 (Wagn. Stat. 57), which declares all contracts void for the sale of goods, &c., for the price of thirty dollars and upwards, unless the buyer shall accept part of the goods and actually receive the same, or give something in earnest to bind the bargain, &c.   The evidence in the case shows an entire contract, entered into the 20th of May, 1873, for the sale of fifty-two head of cattle, under the terms of which two of them were delivered in about one week after the sale, and the remaining fifty to be delivered in lots of ten and fifteen as defendant wanted them, and he was to take the first lot about the first day of June following.   Two of the cattle were received by defendants several days after the contract as a part of the lot contracted for.

Although the contract at the time was void under the statute, still it was good as a proposition of price, and a subsequent delivery and acceptance of two of the cattle, one week after it was made, without any change of its terms, and under the proposition or offer, makes it binding, and takes the case from under the operation of the statute of frauds.   Such is the construction which statutes worded like ours have received in other States.

In the case of Sprague vs. Blake (20 Wend. 63), which involved the same question raised here, and on a similar statute, Cowen, J. remarks : " The part delivery need not be made at the time of contract.   An oral agreement may stand for a mutual agreed proposition, and unless revoked, the subsequent acceptance of part of

the goods which were the subject of oral negotiation will make it binding." Under this view the instructions asked by defendants, numbered 1, 2 and 3, were properly refused by the court. (Hart vs. Sattley, 3.Camp. 528 ; Jennings vs. Wheeler, 7 Cow. 256, 262 : 6 Wend. 397, 400 ; Grant vs. Brown, 48 N. H. 183 ; Marsh vs. Hyde, 3 Gray, 331 ; McKnight vs. Dunlap, 1 Seld. 537. )

Instruction No. 4, which asked the court to declare that if the jury believed the cattle were owned by others in conjunction with plaintiffs they would find for defendant was properly refused.

Our statute provides, that when a party fails to take advantage of a defect of parties, either by demurrer or answer, he shall be deemed to have waived the same. (Wagn. Stat. 1015, § 10 ; Reugger vs. Lindenberger, 53 Mo. 364 ; Kellogg vs. Malen, 62 Mo. 429.)

Judgment reversed and cause remanded. The other judges concur.