JAMES C. KAIN et al., Respondents, v. KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY, Appellant.

**Kansas City Court of Appeals, February 6, 1888.**

1. PRACTICE—PLEADING—SUFFICIENCY OF AVERMENTS AFTER VERDICT—CASE ADJUDGED.—In this case, the allegation of a contract to carry, coupled with the averment and fact that defendant was a railroad corporation, was sufficient to fix the liability of defendant. The petition was certainly good after verdict, where the proof showed that defendant was exercising the office of such carrier, and did, in fact, so contract and act in this instance.

2. NEGLIGENCE—DAMAGES, HOW LIMITED—MANNER OF DOING INJURY IMMATERIAL.—Where the *gravamen* of the complaint is, as in this case, that the injury resulted from the negligent act of the defendant, the issue is, did the loss result from the cause alleged. The way in which the injury was done is immaterial.

3. PRACTICE—REFUSAL OF INSTRUCTIONS.—Where the substance of an instruction asked is embraced in an instruction already given by the court in the cause, it is not error to refuse it.

APPEAL from Jackson Circuit Court, HON. TURNER A. GILL, Judge.

*Affirmed.*

Statement of case by the court.

This is an action to recover damages arising from the negligence of defendant in carrying a carload of chickens shipped by plaintiffs over the defendant railroad from Kansas City to Denver, Colorado. The petition alleges that the chickens were delivered to defendant in good order; that defendant agreed, for a valuable consideration, to receive and transport the same; that, by the negligence of defendant, the car containing the chickens was, at Kansas City, thrown against another car with such force as to kill and destroy fifty-two dozen of said chickens, of the value of $338, and to

destroy coops of the value of $5.60, for which judgment is asked.

The answer admitted that defendant was a corporation. After tendering the general issue, it further pleaded : "That if any loss occurred to plaintiff, such as is mentioned in the petition (which is denied), such injury occurred from the carelessness and negligence of the plaintiffs in this : They used in shipping said chickens, coops insufficient in strength of material, and illy-constructed, so that they could not and did not sustain the ordinary usage and handling necessary in such shipment ; that the plaintiffs were also negligent, in that they over-crowded said coops, putting into each more than twice the number of chickens suitable and safe for shipment over that distance during the weather at the time ; that they piled them one upon another, in such number and with such weight that they crushed each other ; that they did not, in loading the coops into the car, provide for suitable or sufficient ventilation for the same ; that they, during the journey, did not properly and sufficiently provide water and feed for the said chickens, and at the time said chickens left the yard of the defendant, at Kansas City, the plaintiffs knew that they were then sick from some disease peculiar and incident to such fowls, and were dying from said disease."

The reply tendered the general issue as to the new matter set up in the answer.

At the trial the following special issues of fact were, at defendant's suggestions, submitted to the jury, whose returns thereto are appended to the said issues :

"1.   How many chickens were delivered to defendant for shipment ? A.   Two hundred and seventy-four dozen."

" 2.   Were said chickens all healthy and in good condition when so delivered ? A.   Yes."

" 3.   Were any of said chickens dead before they were removed from defendant's side track ? A.   Six to eight."

"4. If so, did they die from any fault of defendant? A. No."

"5. If any died through defendant's fault, how many, and in what did that fault consist? A. Twenty-nine dozen. Carelessness in switching car at Kansas City."

"7. How many of the chickens shipped were delivered to the plaintiffs at Denver, Colorado? A. Undecided."

"9. How many coops were there? A. Evidence not sufficient to determine."

"10. What were the dimensions of the coops? A. 3x5x1 feet."

"11. How many chickens were there in each coop? A. Three and one-half to four dozen."

"12. Did the coops contain them with ease and safety, or were they crowded? A. Not unduly crowded."

"13. Were the coops loaded in the car one on top of the other, until the piles of the coops were about six feet high? A. Yes."

"14. Was there a space left between the rows of coops of about two feet after they were placed in the car? A. Yes."

"15. After the coops were placed in the car were they braced in such a manner as to prevent them sliding about in the car? A. Yes."

"16. If so, how and in what manner were they braced? A. By studding and plank."

"17. Were the coops strong and sufficient for a long journey when each coop was full of chickens, and when piled upon each other to the height of six feet? A. Yes."

"18. Were said chickens provided with feed and water before leaving Kansas City? A. Yes."

"19. Were said chickens fed and watered by any one after leaving Kansas City? A. No evidence on that point."

"20. Was the amount of water and feed given them at Kansas City sufficient for them until they

reached Denver, Colorado? A. No evidence as to the amount of feed given them at Kansas City."

"21. Was the car containing said chickens handled carefully while being transferred from the side track to the main track at Kansas City? A. No."

The jury also returned a general verdict for plaintiffs, assessing their damage at $216.76.

Plaintiffs' evidence tended to support the issues on their part.

The defendant's evidence also tended to support the special issues respecting the negligence of plaintiffs, except as to the allegation of negligence in failing to water and feed the chickens in transit. There was some evidence offered by defendant tending to show that some of the chickens were sick at Kansas City, with chicken cholera, but there was no evidence that such fact was known to plaintiffs. Plaintiffs' evidence tended to rebut that offered by defendant respecting the contributory negligence imputed to the plaintiffs in the answer.

On behalf of plaintiffs the court gave the following instructions :

"1. The court instructs the jury that if they believe, from the evidence, that the plaintiffs did, on or about the sixteenth day of May, A. D., 1884, deliver to the defendant railroad company, at Kansas City, Missouri, properly cooped and loaded, one carload of live chickens, to be shipped to Denver, Colorado; that the defendant received and agreed to transport the same ; that part of said chickens were killed, destroyed, and lost, on account of the carelessness and negligence of defendant, in causing to be thrown the car containing the chickens, with great force, against another car, so as to kill and destroy a portion of said chickens, as charged in the petition, then they will find for plaintiffs."

"2. The court instructs the jury that if they find for plaintiffs they will assess their damages at the value, at Denver, Colorado, of the chickens and coops

destroyed, killed, or lost by the default, carelessness, or negligence of the defendant; that, in so doing, they will take said value as of the time said chickens and coops were and should have been delivered in Denver, and they will allow interest from that date at six per cent. on the amount so found."

The court, of its own motion, gave the following instructions:

"1.   The court instructs the jury that it was plaintiffs' duty so to pack, store, arrange, and brace the coops containing the chickens, as to have them in a reasonably safe condition for ordinarily careful handling, and if they believe, from the evidence, that the damage complained of was due to want of proper packing, storing, arranging, or bracing, then their verdict should be for defendant."

"2.   The court instructs the jury that if they believe, from the evidence, that the chickens in question in this suit were sick when placed in the car in question for shipment to Denver, and they died from said sickness and not from causes alleged in plaintiffs' petition, then their verdict must be for defendant."

The court refused the following instructions asked by defendant:

"1.   The court instructs the jury that, under the pleadings and all the evidence in this case, their verdict must be for the defendant."

"3.   The court instructs the jury that it was plaintiffs' duty to so pack, store, arrange, and brace the coops containing the chickens, as to have them in a safe condition for ordinary handling, and if they believe, from the evidence, that the damage complained of was due to want of proper packing, storing, arranging, or bracing, then their verdict should be for defendant."

"4.   The court instructs the jury that if they believe, from the evidence, that the chickens in controversy in this suit were sick when placed in the car in question, for shipment to Denver, and they died from sickness, then their verdict should be for defendant."

"6.   The court instructs the jury that if they believe, from the evidence in this case, that plaintiffs loaded said chickens in an improper manner, and the damage to said chickens was occasioned by, or on account of, said improper loading, their verdict must be for the defendant."

"9.   The court instructs the jury, that if they believe, from the evidence, that plaintiffs were guilty of negligence in not properly constructing, bracing, storing, or arranging the coops containing the chickens, or in over-crowding the coops with chickens, or in not supplying sufficient food and water for the chickens, and that the negligence contributed to the damage complained of in their petition, plaintiffs cannot recover in this case."

RIEGER & BUCKNER, and STRONG & MOSMAN, for the appellant.

I.   The petition is fatally defective in this, that it contains no allegation that the defendant was a railroad company, or that it was a common carrier.   1 Rorer on Railroads, chap. 26, p. 654, sec. 4.   There being no such allegation in the petition, evidence which tended to show that defendant was a railroad company or a common carrier was inadmissible.   Where loss or damage is claimed in the carriage of live stock, the burden of proof is upon the plaintiff claiming such damages to show that the company actually contracted to carry the property in question as such, or else held itself out to the public as a common carrier of this kind of property; and the company, as defendant in such actions, will not be bound to show any facts going to qualify their liability as common carriers, until it shall have first been shown, or proof be first given, tending to show that it had, in some manner, become such in reference to such property.   2 Rorer on Railroads, chap. 56, p. 1300, sec. 2; *Railroad v. McDonough*, 21 Mich. 165; s. c., 4 Am. Rep. 466.

II.   If the plaintiffs were entitled to recover, their

recovery under their petition should have been limited to the chickens killed and coops destroyed at Kansas City. There is not any evidence that a single chicken was killed at Kansas City.

III. The evidence shows that the plaintiffs were negligent in failing and refusing to repair their coops when given an opportunity to do so at Kansas City. Their negligence contributing to the loss, they cannot recover. *Milburn v. Railroad*, 86 Mo. 104.

IV. The court erred in giving plaintiffs' instructions, because they involved issues not made by the petition, and were not properly limited and qualified, and were not based on evidence. *McGinnis v. Railroad*, 21 Mo. App. 399; *Grant v. Railroad*, 25 Mo. App. 227.

V. The court erred in giving instruction number one of its own motion, because the court thereby relieved plaintiffs of that degree of care which the law imposes upon them to care for and protect their own property, which duty was further imposed upon them by virtue of their contract with defendant.

VI. The court erred in refusing to give instruction number one, asked for by defendant, because, under all' the evidence and the pleadings, plaintiffs were not entitled to recover. The court erred in refusing to give instruction number three, asked by defendant, for the reason that the law imposed upon plaintiffs the duty of having their coops and chickens in a safe condition for such careful handling as freight ordinarily receives. *Coggs v. Bernard*, 1 Smith's Lead. Cas., 346-425; *Smith v. Railroad*, L. R. 5 C. P. 102.

VII. The instruction given by the court on the measure of damages was wrong, in that it failed to allow for such loss and damage as usually and necessarily occur on such shipments. Plaintiffs themselves swear that the least number they ever lost on any shipment to Denver was thirteen dozen. Defendant was not liable for such losses as occur necessarily from the vitality of the freight; yet, here the court instructed so

as to allow a recovery for such losses, and the jury actually included such losses in their verdict. *Sturgeon's case*, 64 Mo. 570-572; *Glasscock's case*, 69 Mo. 589; *Armstrong's case*, 17 Mo. App. 403.

VIII. Defendant was not liable for such losses as would occur from the vitality of the freight, or its inherent qualities and nature. Hutchinson on Carriers, secs. 216, 217, 218 and 220. Defendant was not bound to receive the chickens in that condition for shipment, because they were in a state unfit to bear the necessary transportation. Hutchinson on Carriers, sec. 296. It was the duty of the plaintiffs to make reasonable efforts to avoid further loss, when they found the coops were mashed, at Kansas City. *Railroad v. Ragsdale*, 46 Miss. 458; Hutchinson on Carriers, sec. 773; 3 Parsons on Contracts, 178. "Whatever plaintiffs voluntarily suffered, which, by reasonable exertion, they might have avoided, they must charge to their own account." *State v. Powell*, 44 Mo. 440; *Fisher v. Goebel*, 40 Mo. 481; *Warren v. Stoddard*, 105 U. S. 227; *Douglas v. Stephens*, 18 Mo. 362.

IX. The verdict is against the evidence and the court erred in failing to set it aside.

LIPSCOMB & RUST, for the respondents.

I. The special issues presented by appellant and found by the jury amount to an agreed statement of facts, that plaintiffs delivered to defendant, for shipment, two hundred and seventy-four dozen chickens, all in good, healthy condition; that twenty-nine dozen of the same died by the fault of the defendant in carelessly switching the cars at Kansas City; that the chickens were properly cooped in good coops and properly placed in the car. And there is evidence to support those findings.

II. The evidence tends to show that more than that number—as many as thirty-two dozen—were mashed and killed in Kansas City, and that others were left in such a condition by the jar as to smother in a

few minutes, and that more loss would have resulted from a delay of twenty-four hours to re-coop than to ship them on as they were.

III.   As shown by the bill of lading, the defendant received and agreed to transport the live chickens.   If the defendant had admitted in its answer the receipt of, and agreement to ship, the chickens, and had then admitted, as is shown by the special findings, that twenty-nine dozen of them were killed in the yard at Kansas City by the careless switching of the car by defendant, the court would have given judgment for plaintiffs on the pleadings, and that, too, whether the defendant had been a common or private carrier.   We think this proposition so clear that it is needless to examine the instructions, and that the judgment should be affirmed.

PHILIPS, P. J.—I.   It is objected that the petition is defective in that it fails to aver that defendant was a railroad corporation, or that it was a common carrier. The defendant, however, is sued as a railroad corporation, and the answer admits that it is such.   It is also alleged that the chickens were delivered to defendant by plaintiffs, at Kansas City, to be shipped to Denver, Colorado, and that "defendant, for a valuable consideration, received and agreed to transport them."   The allegation of a contract to carry, coupled with the averment and fact that defendant was a railroad corporation, was sufficient to fix the liability of defendant.   1 Rorer on Railroads, 654.   The petition was certainly good after verdict, where the proofs showed that defendant was exercising the office of such carrier, and did, in fact, so contract and act in this instance.

II.   It is insisted that the damages in this case should have been limited to the chickens actually killed in Kansas City.   The allegation of the petition, in effect, is, that the injury complained of was the result of the car, in which the chickens were loaded, being violently thrown against another car in Kansas City. What difference can it make whether the chickens were

killed outright by the collision, or died soon thereafter
on the road to Denver, say within thirty-six hours? 
The *gravamen* of the complaint is, that the injury re-
sulted from the imputed negligent act. So no matter 
where the chickens died, the question was, did the loss 
to plaintiffs result from the negligent act of defendant 
alleged in the petition? The instruction given on behalf 
of the plaintiffs required the jury to find that "said 
chickens were killed, destroyed, and lost on account of 
the carelessness and negligence of defendant in causing 
to be thrown the car containing the chickens with great 
force against another car." This is all the law exacts.

III. It is urged that plaintiffs were guilty of con-
tributory negligence in failing to right up and repair 
their coops in the car at Kansas City, after they discov-
ered the mishap, or in failing to demand of defendant 
such repairs before leaving the station. To this it is 
sufficient to say, in the first place, that defendant 
tendered no such issue in its special defence. The 
answer specifically undertook to set out the imputed 
contributory negligence of plaintiffs, which caused the 
injury. This is not among them. The answer wholly 
denied the allegation as to the collision at Kansas City; 
and defendant's evidence was directed to this issue to 
show that no such abrupt backing of the car in question 
occurred. It could not well have set up the fact of 
plaintiffs' negligence in this particular without admit-
ting that the disarrangement to the coops occurred in 
the Kansas City station. This defendant was unwilling 
to concede; and avoided, either in its answer or any in-
struction asked, presenting any such distinct issue at 
the trial.

IV. The first instruction given for the plaintiffs is 
objected to because it employs the language, "as charged 
in the petition." It is quite apparent from the reading 
of the instruction that it is not obnoxious to the charge 
of referring the jury to the pleadings to ascertain what 
the issuable facts are. All the essential facts to be found 
by the jury are set out in the instruction, and the addi-

tion of the words, "as alleged in the petition," were mere surplusage. They could have done no possible harm to the defendant. It was no more, in effect, than if the court had declared that the facts given in the instruction to be found by the jury, were alleged in the petition.

V. The instruction given by the court on the measure of damages is criticised, because it failed to direct the jury to allow for such loss or damage as is usually or necessarily incident to such transportation. There is no reasonable basis for such complaint. The instruction only authorized the jury to assess such damages as were occasioned "by the default, carelessness, or negligence of the defendant." It is true, as suggested by the learned counsel, that the court refused to submit to the jury for special finding what is the ordinary shrinkage or loss in transportation from Kansas City to Denver? The court accorded to defendant nineteen special facts to be found by the jury on so simple an issue as was presented by this record. There should be some reasonable limit to the multiplication of such submissions. But suppose the court had submitted it, what more could the jury have done under it than to return their opinion, based on any evidence submitted, as to the amount of the shrinkage or loss? How could such finding have altered the result, when the jury found by their special verdict that the fault which occasioned the injury was attributable to the act of the defendant, and they were directed by the court to find such damage as resulted from the negligent act of defendant? If defendant wished the attention of the jury to be especially directed to such ordinary loss it could have asked an instruction to that effect. The court did not limit the inquiry of the jury, in arriving at the measure of damages, to any particular set of facts.

VI. The refusal of the court to give the third instruction asked by the defendant is assigned for error. The substance of this was embraced in the first declaration given by the court of its own motion. The only

difference, if any, is the employment in the instruction given by the court, of the word, "reasonably," before the words, "safe condition." This was a proper qualification. If the coops furnished by plaintiffs were reasonably safe and sufficient for the use to which they were put on this occasion, it was all the law required. By their special verdict the jury found the fact to be, that "the coops were strong and sufficient for a long journey, when each coop was full of chickens, and when piled upon each other to the height of six feet." On such a special finding there can be no practical result to such a criticism.

VII. Complaint is made of the refusal of the court to give the sixth instruction asked by defendant. This instruction announced the law to be, that if the injury to the chickens resulted from the improper manner of loading them in the car, the plaintiffs could not recover. This proposition was fully enough covered by the first instruction given by the court of its own motion, in addition to which the jury, by their special verdict, found that twenty-nine dozen of the chickens shipped "died through defendant's fault—carelessness in switching car in Kansas City." So it may be said of the ninth instruction asked by the defendant. The jury made a special finding of every issuable fact predicated in it, and found the facts against defendant. How can it be held to be reversible error that the court refused to tell the jury, if they found such fact or facts to exist, they should find for the defendant, when the jury by special verdict declared that no such fact or facts did exist?

VIII. Counsel for defendant have urged many other objections; but they are either unimportant, or are covered by the principles of law already announced. It is claimed, for example, that the court erred in directing the jury to assess the damage, if any, done to the coops, at their value in Denver, when there was no evidence of such value in Denver. This part of the instruction may be conceded to be technically wrong. But what possible harm could have come to the defendant

from this direction? The amount of this damage did not possibly exceed five or six dollars, and the evidence showed what the amount of injury to the coops was. As there is nothing to indicate that the jury placed any different amount of damage on the coops by reason of this direction, it would be trifling with the administration of justice to reverse this cause on such a naked technicality.

It may finally be observed, that the special findings of facts made by the jury were such as to make the general verdict for plaintiffs unavoidable. The only remaining fact was as to the amount of the damages. There was sufficient evidence to support this verdict.

The other judges concurring, the judgment of the circuit court is affirmed.