KINGSLAND & FERGUSON MANUFACTURING COMPANY, Respondent, v. ST. LOUIS MALLEABLE IRON COMPANY, Appellant.

St. Louis Court of Appeals, February 28, 1888.

1. PRACTICE—ACCOUNT—INSTRUMENT OF WRITING.—A suit charging the defendant for the manufacture of certain articles, some of which were ordered in writing and the others verbally, an itemized account of the whole being filed with the petition, is not a suit founded upon an instrument of writing, and the written order need not be filed with the petition.

2. —— DECISION OF JURY QUESTION BY THE COURT.—Where the contention was as to whether an agreement between the parties was independent and complete in itself, or was in continuance of previous communications which were mutually understood to be referred to and included, the question was a proper one for the jury; and the court did not err in refusing to decide it by excluding evidence of such previous communications.

3. CONTRACT—OFFER TO DELIVER.—The duty of offering to deliver to the defendant the articles contracted for, is dispensed with when the plaintiff has informed the defendant of their readiness for delivery, and asked for instructions, which the defendant refused to give, or when the defendant has placed himself in a position from which it clearly appears that the offer would be refused.

4. —— MEASURE OF DAMAGES.—Where a party has contracted to receive and pay for certain articles to be manufactured for him, the measure of damages, upon his breach of the undertaking, is not the full value or contract price of the articles refused, but the actual loss of profits sustained by the other party, or the difference between the market value of the articles and the price agreed to be paid by the purchaser.

5. INSTRUCTIONS—COMMENT ON EVIDENCE.—Expressions in an instruction which amount to an unwarranted comment on the evidence should be avoided, even if they are not clearly prejudicial. (Per ROMBAUER, J.)

APPEAL from the St. Louis Circuit Court, HON. DANIEL DILLON, Judge.

*Reversed and remanded.*

C. P. & J. D. JOHNSON, for the appellant: The written order of June 26, 1882, constituted a separate and complete contract for the manufacture of two hundred and sixty sets of castings, and the trial court erred in refusing to dismiss the case as to the first count of the petition, upon defendant's motion, for the non-filing by plaintiff of the instrument. Rev. Stat., sec. 3560; *Rothwell v. Morgan,* 38 Mo. 107; *Burdsell v. Davies,* 58 Mo. 139; *Peake v. Bell,* 65 Mo. 224; Rev. Stat., sec. 3547; *Labadie v. Maguire,* 6 Mo. App. 573. The court also erred in admitting, over defendant's objection, the testimony of the witnesses, Douglas and

Gilson, relative to what passed between the former and defendant's messenger at the time he solicited a bid from plaintiff for the manufacture of the castings in question, because what was said and done at that time constitutes no part of the contract in suit, and the testimony tended to vary or contradict the written agreement. *Miller v. Dunlap*, 22 Mo. App. 101; *Koehring v. Muemminghoff*, 61 Mo. 408; *Murdock v. Ganahl*, 47 Mo. 136; *New v. Bailey*, 3 Mo. App. 598; *Pearson v. Carson*, 69 Mo. 550; *Willard v. Frissell*, 13 Mo. App. 331; *Remington v. Cushen*, 8 Mo. App. 528; *Bunce v. Beck*, 43 Mo. 279. In certain cases it is held that the rule we contend for does not apply where a written memorandum of a contract does not purport to be a complete expression of the entire contract. But this modification does not apply to the case at bar, for the reason that the written order made by defendant and accepted by plaintiff was complete in itself, and the three subsequent oral orders were each separate and distinct contracts. *Turner v. Railroad*, 20 Mo. App. 635; *Railroad v. Cleary*, 77 Mo. 634. Nor does it apply if it is held that the order was not the complete contract; for in such case the rule will not permit that portion of the contract which is in writing to be contradicted by the portion which is oral, and the effect of the testimony was to contradict the order. *O'Neil v. Crain*, 67 Mo. 351; *Rollins v. Claybrook*, 22 Mo. 407; *Jeffrey v. Walton*, 1 Stark R. 113; *Moss v. Green*, 41 Mo. 390; *Lash v. Parlin*, 78 Mo. 394. There was no evidence of an offer, before suit, by plaintiff, to deliver to defendant the 5,645 pounds of castings alleged to have been manufactured by the former and not delivered. *Stillwell v. Bowling*, 36 Mo. 310. The second instruction also improperly told the jury that the measure of damages as to the 5,645 pounds of castings was two and three-quarters cents per pound, the price agreed to be paid therefor by defendant. *Whitmore v. Coates*, 14 Mo. 9; *Northrop v. Cook*, 39 Mo. 211; *Rickey v. Tenbroeck*, 63 Mo. 567. The second instruction is objectionable on

still another ground ; it singled out and called the jurors' attention particularly to the letter of defendant of September 1, and told them, in effect, that it constituted evidence of the plaintiff having been, by the sending of the letter, prevented from delivering the balance of the manufactured castings. But even if it did, the court should not have thus directed attention to it. *Hackman v. Maguire*, 20 Mo. App. 289 ; *Kaiser v. Railroad*, 7 Mo. App. 579 ; *Pourcelly v. Lewis*, 8 Mo. App. 593 ; *Koenig v. Ins. Co.*, 3 Mo. App. 596 ; *Jamison v. Carroll*, 5 Mo. App. 598 ; *Ehrlich v. Ins. Co.*, 15 Mo. App. 579 ; *Shaffner v. Leahy*, 21 Mo. App. 110 ; *Judd v. Railroad*, 23 Mo. App. 56. The evidence did not conform to the pleadings. The petition declared on a current account, and the proof established a specific contract or contracts. *Clements v. Yeates*, 69 Mo. 625, and cases cited ; *Weil v. Posten*, 77 Mo. 284 ; *Huston v. Forsythe*, 56 Mo. 416 ; *State v. Roberts*, 62 Mo. 388 ; *Buffington v. Railroad*, 64 Mo. 246 ; *State v. Martin*, 77 Mo. 676.

EDWARD CUNNINGHAM, Jr., for the respondent : Where the buyer refuses to receive and accept goods contracted for, the seller has his election of remedies, and he may either sue for the difference between the contract price and the market price at the time and place of delivery, if there is a market price ; or, secondly, he may sell the goods at the risk of the first buyer and charge him with the difference between proceeds of that sale and original contract price ; or, thirdly, he may retain or store the goods for the use of the buyer and sue him for the entire purchase price. Benjamin on Sales (Corbin's Am. Ed.) sec. 1165.

THOMPSON, J., delivered the opinion of the court.

The petition in this case contains two counts. As no question arises upon the second count, it will be laid out of view. As a question arises in connection with the first count, it seems best to set it out in full. It is

as follows : "For its first cause of action plaintiff states that, heretofore, at sundry dates between the twentieth day of June, 1882, and the fifteenth day of September, 1882, defendant requested plaintiff to manufacture for and deliver to defendant one thousand and forty sets of castings for Dutch ovens, and agreed to pay plaintiff therefor on delivery thereof at the price and rate of two and three-fourths ($2\frac{3}{4}$) cents per pound of such castings, which was the value thereof ; that thereupon plaintiff, in consideration of defendant's said promise, accépted said order and agreed to make and deliver said castings to defendant ; that said one thousand and forty sets of castings amounted to more than ninety thousand pounds. Plaintiff says that thereupon plaintiff proceeded to make said castings, and from time to time, up to the first day of September, 1882, made and delivered to defendant, and defendant received and accepted of plaintiff, 78,191 pounds of said castings ; that, on the day last aforesaid, and without objection or notice from defendant to the contrary, plaintiff had made for defendant, as aforesaid, 83,836 pounds of said castings, of which amount 78,191 pounds had been delivered, received, and accepted, as aforesaid, and 5,645 pounds were then just finished and ready for delivery, all which will more fully appear from the itemized account herewith filed marked exhibit 'A'; that, on said first day of September, 1882, defendant notified plaintiff to stop making any more of said castings until further instructions should be given plaintiff by defendant. Plaintiff says plaintiff thereupon, and often thereafter, tendered and offered to deliver to defendant, and is still ready and willing to deliver to defendant, said 5,645 pounds of said castings so made and delivered, and thereupon, and often thereafter, asked instructions of defendant, and offered to make and deliver, and is still ready and willing to make and deliver, to defendant the balance of the said one thousand and forty sets of castings, but plaintiff says defendant did then refuse, and has ever since refused, and still refuses, to receive said

5,645 pounds of said castings, or to give plaintiff instructions, or to allow plaintiff to make for or deliver to it the balance of said one thousand and forty sets of castings, or any part thereof. Plaintiff says that said 83,836 pounds of castings made by it, as aforesaid, at the request of defendant, as aforesaid, amounts, at the said price of two and three-fourths cents per pound, to the sum of $2,305,49; that, of said sum, the defendant has paid plaintiff $645.74; that plaintiff demanded the balance, to-wit, $1,659.75, on the second of January, 1883, but defendant refused, and still refuses, to pay the same, or any part thereof. Wherefore plaintiff prays judgment for $1,659.75, with interest at the rate of six per cent. per annum from the second day of January, 1883, and costs." Annexed to the petition was an itemized statement of the account therein recited.

The answer to the first count, after a general denial, runs as follows: "And for a further answer to said count, defendant states that, on or about the twenty-sixth day of June, 1882, it entered into a contract, partly written and partly oral, with the plaintiff, whereby the plaintiff undertook and agreed to manufacture and deliver to the defendant two hundred and sixty sets of Dutch oven castings from certain patterns then and there furnished by the defendant to the plaintiff, each set of said castings to consist of one body, one cover, four legs, two ears, and one handle, with four holes drilled in each body, for the price and sum of two and three-quarter cents per pound of said castings; that said contract is the same as the one specified in said first count of plaintiff's petition; that, thereafter, plaintiff manufactured and delivered to defendant, and defendant received and paid for to plaintiff, all of the said Dutch oven castings provided for in said contract, in accordance with the terms thereof. Wherefore, plaintiff prays for judgment."

The reply to this was a general denial. The issue thus presented was, whether the defendant ordered of the plaintiff ten hundred and forty sets of the castings

named, or only two hundred and sixty sets.  This was the only contest at the trial.  The plaintiff's evidence tended to show that the defendant had ordered of the plaintiff ten hundred and forty castings, of four different sizes, two hundred and sixty of each size, made according to four different patterns, furnished by the defendant to the plaintiff at four different times, as hereinafter stated.  The defendant's testimony tended to show that it had ordered of the plaintiff but two hundred and sixty castings, which were to be furnished in "nests," the castings to be of four different sizes, sixty-five castings in each size, making in all sixty-five "nests."  There was a verdict and judgment for the plaintiff in the sum of $2,067.19 on the first count, from which the defendant prosecutes this appeal.

I.  The plaintiff's attorney, in his opening of the case, stated to the jury, in substance, that, prior to June 26, 1882, an agent of defendant called upon plaintiff's representatives to solicit bids for the manufacture, by the plaintiff, of a lot of "Dutch oven castings;" that, at the time defendant's agent stated that defendant would want upward of one thousand sets of the castings; that no agreement was effected, at that time, between the parties; that, several days thereafter, the plaintiff's representatives, hearing nothing more from the defendant, telephoned defendant's president, asking him "what about the castings?"  And that the only thing then agreed upon was what price per pound defendant was to pay plaintiff for the castings; that, on the same day, or the day following, the defendant sent, by messenger to plaintiff, the following written order, together with the set of patterns mentioned therein, to-wit:

"St. Louis, June 26, 1882.
"Kingsland & Ferguson Manufacturing Company:

"Gentlemen:—Make us 260 sets of Dutch ovens from patterns sent; a set consists of one body, one cover, four legs, two ears, one handle.  You to drill

four holes in body as per instructions. Price 2 3-4 cents per pound.

"Yours, etc.

"ST. LOUIS MALLEABLE IRON CO.,

"H. M. FILLEY, President.

"P. S. Will send other patterns as soon as finished."

He also stated that, about a week after this, the same messenger took to the plaintiff another set of patterns, but of a smaller oven, and directed plaintiff to make two hundred and sixty castings from them; that about a week later he took to the plaintiff another set of still smaller patterns, and ordered two hundred and sixty sets of castings from them, and still later took another and smaller set, and ordered two hundred and sixty sets of the castings to be made from them.

Whereupon, and before any evidence had been introduced, the defendant moved the court to dismiss the case as to the first count, for the reason that it appeared from the pleadings, the record, and the statement to the jury by the plaintiff's attorney in his opening, that the said count is founded upon a written contract which is not pleaded, relied upon, nor filed by the plaintiff in the case. This motion the court overruled, and defendant duly excepted.

Afterwards, plaintiff's attorney offered in evidence the order mentioned. Defendant objected to its introduction upon the ground that it had not been pleaded, nor relied upon, nor filed in the case. The court overruled the objection, the defendant duly excepted, and the paper was admitted and read to the jury.

This ruling presents the first error assigned. We see no error in it. The statute recites: "When any petition, or other pleading, shall be founded upon any instrument of writing, charged to have been executed by the other party, or his testator or intestate, or other person represented by such party, and not therein alleged to be lost or destroyed, the same shall be filed with such petition or other pleading." It may be conceded that such a question can be made in the trial

court by objections to the evidence. *Labadie v. Maguire*, 6 Mo. App. 573. It may also be conceded that the objection may be taken by a motion to dismiss, or to require the party to comply with the statute and file the instrument. *Hannibal & St. Joseph Railroad Co. v. Knudson*, 62 Mo. 569, 571; *Rothwell v. Morgan*, 37 Mo. 107. The statute does not apply to such a case as this. The suit is not brought upon the written instrument in question. The petition does not in terms count upon it or refer to it, but states a cause of action upon an account, the items of which are set out in a separate exhibit. That the only contract between the parties was for the manufacture of two hundred and sixty Dutch ovens, as specified in this paper, was set up by the defendant in its answer. Whether this was so or not was the issue to be tried. This issue was to be tried by the jury under all the applicatory evidence and proper instructions from the court, and it was not competent for the court to decide it, thus in effect deciding the whole case, on this preliminary motion. The court, therefore, committed no error in this ruling.

II. There was evidence tending to show that, about the nineteenth of June, 1882, the defendant sent one of its employes, Roderman by name, to the plaintiff, and directed Roderman to solicit from the plaintiff a bid to make for defendant castings for Dutch ovens; that, on that day, Roderman went to plaintiff's place of business and there talked with plaintiff's witnesses, Douglas and Gilson, who were employes of the plaintiff and had charge of plaintiff's foundry; that, at said interview, Roderman stated that he wished to know at what price plaintiff would make for defendant some ten hundred and forty sets of castings similar to certain castings or models which Roderman then displayed, to be made in four different sizes, and the four sets differing only in size; that Douglas stated to Roderman that plaintiff would do the work for four cents per pound; that Roderman then said to Douglas that the price was too high, and he, Roderman, would have to make further inquiry

for bids; that Roderman then went away from plaintiff's foundry. The testimony adduced by both parties touching this interview between Roderman, Douglas and Gilson, was to the effect that Roderman represented that about one thousand of the sets would be required, and the plaintiff's evidence tended to show that the quantity required was important to be known, because it was a material thing to be considered in fixing the price.

The testimony further tended to show that, three or four days after this interview between Roderman, Douglas and Gilson, the plaintiff's secretary, Douglas, called up the defendant's president, Filley, through the telephone, and asked him, "What about those castings for Dutch ovens?" That Filley replied, "Your offer is too high;" that further conversation over the telephone ensued, the conclusion of which was, that, without any mention of any quantity or number of castings, plaintiff, through Douglas, agreed with defendant, through Filley, to furnish the Dutch ovens under discussion for two and three-fourths cents per pound. Douglas testifies that, at that conversation by telephone, no particulars other than price were discussed or mentioned, and that both parties assumed to understand what had passed between Roderman, on the one hand, and Douglas and Gilson, on the other hand.

The testimony further showed that, on the twenty-sixth of June, 1882, the defendant sent by Roderman the written order for two hundred and sixty Dutch ovens above set out. This letter was delivered by Roderman to Douglas, the plaintiff's secretary, on the day of its date. Roderman, it will be remembered, was the same person who had come in the first instance to solicit a bid. The testimony of Douglas and Gilson, given for the plaintiff, was to the effect that Roderman brought with him, when he came on the twenty-sixth of June to deliver this order, the same set of patterns which he had brought with him on the nineteenth, when he came to solicit a bid; that he stated to the witnesses that he

wanted two hundred and sixty sets of castings made by those patterns, and that he would bring patterns for the other sizes as soon as they were ready; that, about one week after the time when Roderman left the first set of patterns, he came again with a second set of patterns for the next smaller size of Dutch ovens; that he left these with Gilson, and said that he wanted as many castings made upon those patterns as upon the first set which he had left; that likewise, at intervals of about one week, Roderman came twice more, leaving patterns for the third and patterns for the fourth size of Dutch ovens, and in each case stating that he wanted as many castings upon the patterns then brought as upon each of the preceding sets of patterns. The evidence tended to show that the plaintiff had made and delivered about eight hundred sets, and was proceeding to complete the rest, when, on September 1, 1882, the defendant directed him to stop work by the following letter:

"St. Louis, Sept. 1, 1882.
"Kingsland, Ferguson & Co.,
        "City.
"Gentlemen:—Confirming our telephone message of this morning, we desire that you will stop making any more Dutch oven castings until further instructions
        "Very respectfully,
                "St. Louis Malleable Iron Co."

From these statements the theories of the respective parties will be seen. The theory of the plaintiff was, that the first negotiations of June 19, although abortive, were so revived as to connect themselves with the subsequent contract, and to form, therefore, relevant evidence in the case as to what the contract really was. The theory of the defendant, on the other hand, was, that these negotiations were merged in the written order of June 26 for two hundred and sixty ovens; that this order became in itself, when accepted as it was, a complete contract, and the only evidence of the contract of that date; but its contention was that each of the subsequent three orders delivered by Roderman specified no number to be made,

but consisted merely in the delivery of the additional patterns, for the two hundred and sixty sets which were to be made under the written order of June 26. It is conceded that the evidence adduced by the plaintiff tended to show that there were either four separate or distinct contracts entered into between the parties, each for the manufacture of two hundred and sixty sets of castings, the first of which was embodied in the order of June 26, or that there was one entire contract for the manufacture of one thousand and forty sets, of which the written order constituted but part, the rest being oral. For the purposes of the plaintiff's case it seems to have been immaterial which of these views was taken.

This long statement of the evidence seems necessary in order to determine the value of the second assignment of error, which is this: That the court erred in admitting, over the defendant's objection, the testimony of the witnesses, Douglas and Gilson, as to what passed between the former and defendant's messenger at the time he solicited a bid from the plaintiff for the manufacture of the castings in question on June 19; because, as the defendant argues, what was said and done at that time constitutes no part of the contract in suit, and the testimony tended to vary or contradict the written agreement.

We see no error in this ruling. It cannot escape attention that this objection proceeded upon the same view as the motion to dismiss already considered, which was that it was competent for the court to determine, upon a preliminary objection to evidence, the very question at issue,—what the contract between the parties was,—which, in the state of the evidence above recited, was clearly a question for the jury under the instructions of the court. It is true that, where a memorandum in writing, delivered by one party and accepted by the other, purports to cover the entire transaction, it merges all prior negotiations, and evidence of any prior oral contract embraced within or concluded by the terms of the writing, is hence inadmissible. *Railway Co. v.*

*Cleary*, 77 Mo. 634; *Turner v. Railroad*, 20 Mo. App. 635. But such was not the case here. The order of June 26 did not purport to embrace the terms of a contract complete within itself. The postscript, "will send other patterns as soon as finished," in itself tends to connect this order with other negotiations which had been made, and this might be understood as referring to other patterns which were necessary to be used in making the other ovens which had previously been spoken of. We, therefore, see no error in admitting evidence of this first negotiation.

III.    The next assignment of error is, that there was no evidence of an offer, before suit, by the plaintiff, to deliver to the defendant the 5,645 pounds of castings, alleged to have been manufactured by the plaintiff and not received by the defendant. There was evidence tending to show that when, on the first of September, the defendant ordered the plaintiff to stop making any more castings, there was this number of pounds of castings on hand already made, under previous orders; that the plaintiff, through an agent, requested of the defendant instructions as to what to do with them, and that defendant refused to give any instructions. As the contract did not specify where or when the castings should be delivered, it was strictly incumbent upon the plaintiff to notify the defendant of its readiness to deliver, and to ask him to appoint a place of delivery, all of which was fairly covered by the request for instructions, made by the plaintiff and refused by the defendant, as the plaintiff's testimony tends to show. Besides, the law is that a tender is not necessary where the party to whom it would be made has previously notified the party by whom it would be made that the thing tendered would not be accepted (*McNight v. Watkins*, 6 Mo. App. 118); or where the person to whom it might be made has placed himself in such a position as to make it clearly appear that if made it would be refused. *Deichmann v. Deichmann*, 49 Mo. 107; *Westlake v. St. Louis*, 77 Mo. 47, 51. Such is the

unavoidable inference arising upon the testimony embodied in this record.

IV. This brings us to the last substantial assignment of error, and we are of opinion that this is well taken. It arises upon the giving, at the request of the plaintiff, of the following instruction touching the measure of damages :

"If the jury believe, from the evidence, that defendant ordered of plaintiff two hundred and sixty sets of castings from each of the sets of patterns sent to plaintiff by defendant, and that plaintiff proceeded with reasonable diligence to make and deliver the same, and that defendant received and accepted the castings so made and delivered, and that, on or about the first of September, 1882, and before all of said castings were delivered, defendant sent to plaintiff the letter of that date read in evidence, and that by that letter plaintiff was prevented from delivering any balance of said castings then made and undelivered, and from making any balance thereof then unmade, and that plaintiff has been, at all times, and still is, ready and willing to deliver the balance then made, and to make and deliver the balance then unmade, and that plaintiff offered so to do, but from the date of that letter defendant has refused to receive the undelivered balance of said castings, and has refused to give any further instructions to plaintiff, then the jury will find for the plaintiff on the first cause of action stated in the plaintiff's petition, and will assess plaintiff's damages at the amount of two and three-fourths cents per pound on the amount of all the castings so made and delivered or tendered to the defendant, after giving defendant credit for the amount paid on account ; and to the sum so remaining you will add interest at the rate of six per cent. per annum up to the present time from the date when payment was demanded, or if you find that payment was never demanded, you will add interest at said rate from the fourteenth day of February, 1883."

This instruction clearly directs the jury to award

the plaintiff the full contract price for the castings made and not delivered, and it is so drawn that it might lead them to the conclusion that they were in like manner to give plaintiff full contract price of the castings which it *would have made* and delivered, under the orders received and accepted, but for the refusal of the defendant to receive any more. That the jury so understood it is shown by the verdict which they rendered, which cannot be accounted for on any other hypothesis. Neither of these propositions is the law. The rule of damages in these cases is compensatory merely, aiming to give to the vendor the profit which he has lost by the refusal of the vendee to accept the goods in conformity with the contract. The rule is, that, where the vendee, who has agreed to purchase goods at a certain price, refuses to receive them, the measure of damages is the difference between their market value at the time and place of delivery, and the greater price which he contracted to pay. *Whitmore v. Cotts*, 14 Mo. 9 ; *Northrup v. Cook*, 37 Mo. 208, 211 ; *Rickey v. Tenbroeck*, 63 Mo. 567. The plaintiff might have immediately resold the castings on hand, when the order was received not to make any more, and when the defendant refused instructions as to the disposition of them, and sued for the difference between the price at the resale and what the defendant had agreed to pay for them. *Rickey v. Tenbroeck, supra; Dobbins v. Edmonds*, 18 Mo. App., 320. But this was not done, and the plaintiff was not entitled to retain the goods and also recover the full price which the defendant had agreed to pay for them. So the plaintiff might have recovered the prospective profit which it lost upon the goods not made, in consequence of the defendant's notification of its refusal to receive any more. But there is no evidence in the record as to what such prospective profits would have been, nor as to the difference between the market value at the time and place of delivery of the castings made and delivered. In short, there was no evidence whatever

on the question of damages which satisfies the rule of law above stated.

We see no other error in the instructions prejudicial to the appellant, but for this error the judgment must be reversed and the cause remanded. It is so ordered. Judge Rombauer concurs. Judge Lewis is absent.

ROMBAUER, J., delivered a separate opinion.

In view of a retrial of this cause, I deem it proper to say that I consider those parts of the second instruction given on behalf of plaintiff, which refer to the letter of September 1, 1882, as unwarranted comment on the evidence. I am not prepared to say that, under all the evidence now before us, such comment, even if erroneous, was prejudicial, but the safer course for plaintiff will be to avoid it upon a retrial of the cause.