ST. LOUIS RANGE COMPANY, Respondent, v. KLINE-DRUMMOND MERCANTILE COMPANY, Appellant.

St. Louis Court of Appeals, October 16, 1906.

1. **SALES: Refusal of Purchaser to Accept: Remedies of Seller.** Where a contract of sale of specific articles manufactured by the seller was so far performed by the seller that the property was ready for delivery before he had notice of the buyer's intention to decline acceptance, when the buyer declined to accept, he had his choice of remedies; he could hold the property subject to the buyer's order and recover the full agreed price; or he could sell it for the buyer's account, taking the necessary steps to protect the buyer's interest and then recover the difference between the proceeds of the sale and the agreed price; or he might treat the contract as broken by the buyer and the property as his own (the seller's), and recover the actual loss sustained.

2. ———: ———: **Measure of Damages: Market Value.** In such case where the seller elected to treat the contract as ended and the property as his own, the measure of his damages was the difference between the agreed price and the value of the articles.

3. ———: ———: ———. But where the articles had no market value, the measure of recovery was the agreed price less the reasonable value of the articles at the time and place of delivery under the contract, and this should be ascertained by any testimony tending to throw light on the subject, such as sales actually made, frequency of sales and the testimony of

expert witnesses who were familiar with the trade and the value of such commodities for any use for which they were susceptible.

4. ———: ———: ———: **Instructions.** A manufacturer of stove ranges made a contract with a dealer to manufacture a given number of ranges of an unusual pattern, and after a portion of them had been delivered and paid for at the contract price and the remainder manufactured except that some of them were in detached pieces, not "assembled," the purchaser refused to accept the remainder and carry out the contract. The manufacturer treated the contract as broken, sold some of the ranges already manufactured and sued the purchaser for damages for breach of the contract. *Held*, where there was no evidence of any market value on the articles, an instruction which authorized the jury to take into consideration the "selling value" and deduct it from the contract price, was proper. *Held further*, where the evidence was conflicting as to whether the property was worthless except as junk or whether it had a value as manufactured articles, an instruction describing it as "material" in estimating its value, was prejudicial to defendant. *Held further*, an instruction which authorized a recovery for plaintiff without taking into consideration the ranges already sold as so much deducted from the agreed price, was error.

Appeal from St. Louis City Circuit Court.—*Hon Jesse A. McDonald*, Judge.

REVERSED AND REMANDED.

*Bland & Cave* for appellant.

(1) The well-settled rule of damages for the breach, by the vendee, of an agreement for the sale and delivery of personal property at a future day is the difference between the contract price and the market price at the time and place of delivery, called for by the contract, and it is quite immaterial whether the article contracted for is or is not in existence at the time of the contract, or whether it is one to be manufactured from time to time as required. Kingsland v. Iron Co., 29 Mo. App. 526; Todd v. Gamble, 148 N. Y. 382; Masterson v. The Mayor, 7 Hill 61; Dolph v. Machine Co., 28 Fed. 553; Richey v. Tenbroeck, 63 Mo. 563; Parlin & Oren-

dorff Co. v. Boatman, 84 Mo. App. 75; Nelson v. Hirsch & Sons Co., 102 Mo. App. 498; Halliday & Co. v. Lecsh, 85 Mo. App. 285. (2) To justify a departure from this rule that the damages are measurable by the difference between the contract price and the market price, it must appear that there is no such market price or value, and there being in this case, evidence both pro and con, as to the existence of such a market price, the court erred in instructing the jury to depart from this rule, without requiring it to first find that there was no such market value. The question as to whether or not there was such a market price should have been submitted to the jury. Todd v. Gamble, 148 N. Y. 382; Masterson v. Mayor, 7 Hill 61. (3) If there be no such market value, and steps have been taken towards the performance of the contract, before the breach by the vendee, as in this case, then the vendor's damage will consist of two items: first, the profits which he would realize by performing the whole contract, to wit: the difference between the contract price and the cost of production; and second, what he has already expended towards the performance less the value of the materials on hand. United States v. Behan, 110 U. S. 338; Dolph v. Machine Co., 28 Fed. 553; Hammond v. Beeson, 112 Mo. 190; Sutherland on Damages, sec. 649. (4) And in determining the value of such material on hand, the evidence being that it could be converted into the finished product at a slight expense, the fair value of such material, *for the purpose of being finished into ranges* should be taken, and the court erred in excluding all evidence of such value, and in admitting evidence of its value as "junk." Roberts v. Wells & Co., 38 N. Y. S. 845; Brin v. McGregor (Tex.), 64 S. W. 78. (5) The rule is, that where a party is entitled to the benefit of a contract, and can save himself from a loss arising from a breach of it at a trifling expense, or with reasonable exertions, it is his duty to do it, and he can charge the defendant with

such damages only as with reasonable endeavors and expense he could not prevent. And the plaintiff here should not be allowed to mulct the defendant on a valuation of the material on hand as "junk" when, by a reasonable effort and expense, it could, as there was evidence tending to prove, convert it into the finished product, and dispose of it for a much greater price. Warren v. Stoddard, 105 U. S. 224; Sutherland on Damages, sec. 648; American Pub. & Eng. Co. v. Walker, 87 Mo. App. 503; Sonka v. Chatham (Tex.), 21 S. W. 948.

*Seneca N. & S. C. Taylor* for respondent.

(1) (a) The refusal to permit the performance of a contract is equivalent to performance for the purpose of maintaining an action and the contract price will be the measure of damages, unless it be shown that the actual damages were less. Peck Co. v. Corrugating Co., 96 Mo. App. 212; Seaman v. Paddock, 55 Mo. App. 301; Pond v. Wyman, 15 Mo. 183; Park v. Kitchen, 1 Mo. App. 358. (b) The rule is, that where one party to a contract interferes with its performance, by the other party, to such an extent to amount to a refusal to perform, the party interfered with may recover as for a full performance of his contract. Crescent Mfg. Co. v. Nelson Mfg. Co., 100 Mo. 325; Murphy v. Black, 78 Mo. 319; Little v. Mercer, 9 Mo. 218; Halpin v. Manny, 57 Mo. App. 61; Hinckley v. Steel Co., 121 U. S. 264. (2) The proper measure of damages in the case at bar is the difference between the balance due on the contract price, less what it would have cost to have performed the contract, that is, assemble the parts for the ranges and less also the value of the material left over, in a partially manufactured condition for the completion of the contract. Berthold v. Const. Co., 165 Mo. 304; Lumber Co. v. Warner, 93 Mo. 374; Halpin v. Manney, 57 Mo. App. 59; Dobbins v. Edmonds, 18 Mo. App. 307; Park v. Kitchen, 1 Mo. App. 258; Little v. Mercer,

9 Mo. 218; Crescent Manufacturing Co. v. Nelson Mfg. Co., 100 Mo. 325; Hammond v. Pearson, 112 Mo. 198; Brandt v. Schuchmann, 60 Mo. App. 72; Masterson v. Mayor of Brooklyn, 7 Hill 72; Fox v. Harding, 7 Cush. 516; Danforth v. Railroad, 93 Ala. 614; Hinkley v. Pittsburgh S. Co., 121 U. S. 264; Fairfield v. Jeffreys, 68 Ind. 578; Silberstein v. Duluth Co., 68 Minn. 430; Baker & Co. v. Mfg. Co., 42 N. Y. Supp. 76; U. S. v. Speed, 75 U. S. 77, 8 Wall. 77; Sedgwick on Damages (8 Ed.), sec. 618; Eckenrode v. Chemical Co., 55 Md. 51; Hale v. Trout, 35 Cal. 229; Singleton v. Wilson, 85 Tenn. 334; Railroad v. Shirley, 45 Tex. 356; Fath Co. v. Tate, 105 Ky. 701; Tufts v. Weinfeld, 88 Wis. 647; Muskegan Co. v. Keystone, 135 Pa. St. 132; Williams v. Lumber Co., 118 N. Car. 938; Transfer Co. v. Ice Mfg. Co., 42 N. Y. S. 76.

STATEMENT.— On December 18, 1902, plaintiff, a corporation, entered into a contract with the Luyties Mercantile Company, another corporation, by which plaintiff agreed to manufacture exclusively for the Luyties Company a special design of steel range, to be known as "Luyties Malleable" and not to manufacture or sell said range to any mail-order house selling direct to the consumer for a period of five years from the date of the contract, the Luyties Company agreeing to take one thousand ranges of the designated pattern with the option to take an additional thousand. The price of all the thousand ranges, except six, was to be $20 each. Those six were of superior construction and to bring a higher rate. One hundred ranges were to be furnished to the purchaser each month and a greater number on thirty days' notice if more were desired. After 104 ranges had been delivered to the Luyties Company the contract was assigned by said company to the defendant, the Kline-Drummond Mercantile Company, and the latter company was accepted by plaintiff as a party to the agreement in lieu of the Luyties Company. Deliv-

eries were duly made to defendant until it had received and accepted two hundred and eighty-nine ranges, when it refused to accept any more. At the time of defendant's default, about six hundred and three ranges were still to be delivered under the contract and this action is for damages suffered by plaintiff on account of defendant's refusal to take them. After the contract was entered into plaintiff prepared plans for the ranges and purchased all the materials, not only for the thousand which the defendant, as the successor of the Luyties Company in the contract, was bound to purchase, but for the additional thousand which it had an option to purchase. However the latter fact is immaterial in the present case.

The testimony goes to show that the ranges were of unusual construction, in that they were of lighter metal than those commonly sold on the market and perhaps varied from the ordinary patterns in other respects. Each range was to have on it the letters "L. B." and the words "Luyties Malleable." As we gather, these brands were to be on label plates fastened on the range, instead of being moulded into pieces of the range itself. At the time of the default about twenty-five of the unaccepted six hundred and three ranges were finished; that is to say, were put together. All the parts of the others had been manufactured by plaintiff and were on hand, but had not been put together, or "assembled," to use the word of the witnesses. The cost of assembling each range was about $4.07, and the total cost of the construction of each was from thirteen to fourteen dollars. All the ranges received, either by the Luyties Company or defendant, were paid for and $2,500 was paid on those not taken. Plaintiff subsquently sold ten or fifteen to the Lincoln Mercantile Company, thus reducing the number left on its hands. There was testimony that the remainder, or the parts out of which to construct them, were worth about $600 as scrap iron or junk and had no

other value. Defendant's counsel endeavored to adduce testimony respecting the value of the ranges left on hand just as they were; that is to say, with the label plates on them, and also testimony regarding their value with the label plates removed. The court permitted testimony as to what their value was in their actual condition and also "redressed" as the witness said; that is, with certain shelves and the name plates taken off and the ranges renickeled. But some testimony was excluded going to show the reasonable market value of the ranges with the name plates off, or that, in that condition, they had a market value. Defendant excepted to this ruling.

The following instruction on the measure of damages was given at plaintiff's request, the defendant excepting:

"The court instructs the jury that if you find from the evidence in favor of the plaintiff, in assessing its damages you should take into account the total amount plaintiff would have been entitled to receive all told, if the defendant and Luyties Brothers Mercantile Company had, between them, taken the entire one thousand ranges contracted for; and the jury should deduct from such total amount such sums as have been paid to plaintiff upon said contract and also such an amount as it would have cost the plaintiff to set up and complete the remaining ranges not delivered under said contract, and also the reasonable selling value of the material on hand out of which to have completed said remaining ranges; and these items deducted from said total amount which the plaintiff would have received if the entire contract had been carried out by Luyties Brothers Mercantile Company and the defendant herein, will show the amount which plaintiff is entitled to recover as the principal sum in this action, if anything; and the jury are further instructed that they should add to such principal sum interest at the rate of six per cent from the first day of November, 1904, to the date of your verdict."

This instruction was requested by defendant, refused and an exception saved:

"The court instructs the jury that if you find for the plaintiff you will assess its damages at such sum as you may find and believe from the evidence to be the difference between the price agreed to be paid in the contract and the reasonable market value of the ranges in question at the time and place of delivery, and plaintiff is entitled only to receive such actual damages as you may find and believe from the evidence will compensate it for the loss sustained, if you find it has sustained a loss, on account of the non-acceptance of the ranges mentioned in the contract sued upon, and you will find accordingly."

The jury's verdict was for $3,659.76 in favor of plaintiff and judgment having been entered accordingly, defendant appealed.

GOODE, J. (after stating the facts).—1. We are called on to determine the rule by which plaintiff's damages are to be ascertained. The case is that of a vendee of personal property who has refused to accept the goods bought, and as different rules for the measurement of damages are laid down in such cases according to the circumstances presented, it is essential to fix in mind the important facts of the present controversy. At the time of defendant's refusal to accept any more ranges, plaintiff had on hand six hundred and three, of which about twenty-five were completed and ready for delivery and all the parts of the others were manufactured and ready to be put together. The undelivered ranges were not treated by plaintiff as the property of defendant or held for delivery to it on demand after its refusal to accept them; on the contrary, plaintiff sold some of them for $20 each, or thereabouts, and those on hand were being disposed of occasionally at the rate of one a week. At that rate of sale more than ten years would be consumed in disposing of the entire lot, and as plaintiff had invested

in them about $6,000, it might prove detrimental to its business to keep that portion of its capital thus invested for so long a time. There was no evidence to show the ranges had a market value in St. Louis or elsewhere, if by market value is understood a current price fixed by sales of similar property as articles of commerce in the ordinary course of business. As stated, the ranges were of an unusual pattern and of lighter material than is commonly used in ranges, besides having label plates on them which, though the evidence shows they could be detached easily, may have hindered, in some measure, the sale of the articles and have lessened their value. There was testimony that the ranges left on hand were of no value except for junk or scrap iron, but it cannot be doubted that some of the evidence tended to show they had a value as ranges above what they would yield for junk. It looks improbable that such articles, even if of an unusual pattern and weight, could not have been sold at some price as ranges; but what we hold is that the evidence raised an issue of fact as to this point. The foregoing are the material circumstances to be borne in mind in considering the question of how plaintiff's damages are to be measured. The guiding principle of the law in cases arising on breaches of contracts for the sales of personal property, is to give the aggrieved party the benefit of his contract, by putting him in as favorable a condition as he would have enjoyed if the other party had performed, instead of violating, his agreement. In other words, to afford full indemnity for the breach. All other rules, including the one relating to the difference between the agreed and the market value of the thing sold, are but corollaries of this one, used to apply the principle of it to the different classes of cases which occur. Let us then ascertain what plaintiff would have obtained if the contract had been completed. As the ranges actually delivered were paid for, that part of the transaction may be disregarded. If the defendant

had accepted the remainder, it would have received the total contract price. Whatever defendant paid in advance on the undelivered ranges is to be deducted, of course, from the amount of its recovery. Some of the ranges were sold to another concern subsequent to defendant's breach and the amount received for them, less the cost of disposing of them, is likewise to be deducted. There is also to be deducted the cost of assembling those which had not been put together, approximately $4.07 for each range, because plaintiff would have had to incur that expense before the ranges could have been delivered if defendant had gone on with its contract. There remains to be deducted the value of the ranges left on plaintiff's hands, and the real question for decision is how this value is to be ascertained.

If the buyer of personalty refuses to accept the subject-matter of the bargain when tendered by the seller in proper condition and at the proper time and place, the law allows the seller several modes of redress. If the contract has been so far performed by the seller that the property is ready for delivery before he has notice or knowledge of the buyer's intention to decline acceptance, he may treat the property as belonging to the buyer, hold it subject to the latter's order and recover the full agreed price; or he may sell it for the buyer's account, taking the requisite steps to protect the latter's interest and get the best price obtainable, and then recover the difference between the proceeds of the sale and the agreed price; or he may treat the sale as ended by the buyer's default and the property as his (the seller's) and recover the actual loss sustained, which is ordinarily the difference between the agreed price and the market price. [Dobbins v. Edmonds, 18 Mo. App. 307, 317; Kingsland v. Iron Co., 29 Mo. App. 526; Lumber Co. v. Chicago Lumber Co., 51 Mo. App. 555; Richey v. Tenbroek, 63 Mo. 563; Hayden v. Demetz, 53 N. Y. 426, 431.] Where specific articles are sold, and especially where

they are manufactured pursuant to an order from the vendee, the title is regarded, usually, as having vested in the latter without delivery, so as to give the vendor the right, on refusal to accept, to recover the stipulated price. Under such circumstances the case presented is different from that of a sale of goods generally, like merchandise or corporate stocks currently dealt in, when it is contemplated that specific articles or stocks shall be subsequently selected and delivered pursuant to the contract. [Bethel St. Co. v. Brown, 57 Maine 9; Page v. Carpenter, 10 N. H. 77; Brookwalter v. Clark, 10 Fed. Rep. 793; Shawhan v. Van Nest, 25 Ohio St. 490; Mitchell v. LeClaire, 165 Mass 305.] The decisions holding vendees responsible for the full contract price in cases of specific articles manufactured for them, proceed on the assumption that they have acquired title to the property and that it is held subject to their order, or else that it is worthless in the hands of the vendors so that the latter cannot partly reimburse themselves for their loss by using or disposing of it. [Black River Lumber Co. v. Warner, 93 Mo. 374, 6 S. W. 210; Crown Vinegar & Spice Co. v. Whers, 69 Mo. App. 493; Brookwalter v. Clark, supra.] In the Missouri cases just cited, the property sold had been manufactured and was ready for delivery. The opinion in Lumber Co. v. Warner says that when the subject-matter of the contract is specific articles made for the vendee, and the vendor has completed his contract, it is just that the damages in case of refusal to accept the goods shall be their contract price; but that the vendor will hold the property for the vendee. In Mitchell v. LeClair, supra, the defendant had ordered sixty tubs of butter which plaintiff set apart for him, but he subsequently refused to take it. Referring to these facts, the court said that if the vendee in such case refused to take the goods and pay for them, the vendor might recover the price, if he kept the goods in readiness for delivery to the purchaser. It sometimes hap-

pens, as in the instance of a suit of clothes made for a person, or a portrait painted for him, that the thing sold is obviously worthless to any one else and then, we apprehend, the seller could recover the full price on the purchaser's refusal to accept, without regard to whether the contract was still executory, provided it had been performed to the extent of having the subject-matter of it ready for delivery. [Allen v. Jarvis, 20 Conn. 38.] This is not such a case; for it is apparent that the unaccepted ranges had a value either as scrap iron or as ranges; and, indeed, this proposition is conceded. We have said that plaintiff did not elect either to hold the ranges as defendant's property to be delivered on demand, or sell them for defendant as its agent. On the contrary plaintiff treated the ranges as its own and proceeded to sell them from time to time. In view of this fact, defendant is entitled to a deduction of the value of the ranges from the agreed price. The rule for ascertaining what that value is would be plain if the articles had a market value; for then plaintiff would be charged with the market value and entitled to recover the difference between that and the agreed price. But we find no evidence that they had a market value fixed by current sales; as are the values of wheat, cattle, government bonds and other standard securities or articles of commerce which are the subject-matter of daily transactions; and that is the meaning commonly attached to the term "market value." It follows that defendant's instruction was rightly refused. [Jonas v. Noel, 98 Tenn. 440.] What the law intends to allow the seller is compensation for his actual loss. [Rand v. Railroad, 40 N. H. 79, 85; Gason v. Madigan, 13 Wis. 67, 72; Williams v. Jones, 1 Bush (Ky.) 621 627; Gordon v. Norris, 49 N. H. 376, 385; Culin v. Glass Works, 108 Pa. St. 220; Chamberlain v. Farr, 23 Vt. 265.] The difference between the market and the agreed value is adopted, when it can be, as the most accurate

mode of ascertaining what damages ought to be allowed. This is because the seller may forthwith reimburse himself by selling to some one else if the goods have a ready market.   Now when there is no market value in that meaning of the term, the damages must be ascertained in some other mode.   [1 Sedgwick, Damages, sec. 495; Woods' Mayne, Damages, sec. 22; Todd v. Gamble, 148 N. Y. 382; Masterson v. Mayor, 7 Hill 61.]   The reasonable value of the ranges in controversy at the time and place of delivery under the contract, should be ascertained by any testimony tending to throw light on the subject; such as sales actually made, the frequency of the sales, and the testimony of expert witnesses, who are familiar with the trade in ranges and the value of such commodities, as to the value of those in question for any use of which they are susceptible.

In the instruction on the measure of damages the court used the expression "reasonable selling value" to indicate the amount plaintiff was to be charged with on account of the undelivered ranges.   This expression was not erroneous under the circumstances of the present case, there being no market value for the articles, and in view of the facts that they were manufactured to sell and not to keep or work into other products and were worthless to plaintiff for any purpose except to sell.   Indeed, both parties agree that the amount to be deducted from plaintiff's recovery is the exchangeable value of the ranges left on hand; but plaintiff contends that this is their reasonable selling value, whereas defendant says it is their market value.   The two expressions are in some measure synonymous, but the usage of trade has affixed a technical meaning to market value.   The selling value of an article is often equivalent to its actual value, and should be so regarded in the present case in order that plaintiff may be reimbursed fully.   It may be, as plaintiff contends, that the ranges are worth nothing at all except as junk; and if this is true, plaintiff is

only to be charged with their value for that purpose. But as intimated, the inference is fair that they would sell for more than the price of junk, either with the label plates attached, or without them and redressed. The evidence goes to show the labels are detachable without much labor. Testimony was competent on those issues and, indeed, some was received. But other testimony of the same character as that received, and tending to show what the ranges would bring with the label plates removed, was excluded by the court on plaintiff's objection. Now without saying that plaintiff was bound to go to the trouble of removing the labels to reduce the damages defendant would have to pay, the jury might find that the ranges could have been disposed of to dealers at a price above what they were worth as junk, to be sold by the dealers at retail either redressed or as they were.

As to the ranges actually sold after defendant's breach, the price obtained for them was the measure of their value. No notice was taken of these sales in instructing the jury, though the evidence is undisputed that they were made. It follows that if the jury found the ranges left on plaintiff's hands were worthless except as junk, they allowed defendant no more credit for those sold than what they would bring as junk; though in fact they brought more, and perhaps the full agreed price. In this respect the instruction on the measure of damages was inaccurate. We think it is subject to criticism for speaking of the property left on plaintiff's hands as "material" out of which to complete the remaining ranges. This expression had some tendency to produce an impression favorable to plaintiff's contention that the undelivered ranges were worthless as such; whereas all their parts were finished and they needed only to be put together. The instruction inclined toward plaintiff's theory on a disputed issue of fact. Not only had some of the completed ranges been sold, but

some completed ones were still on hand at the time of the trial and these could hardly be designated as "material on hand out of which to complete" the remaining ranges.

The judgment is reversed and the cause remanded. All concur.