OSMAN  B.  CAMPBELL,  Respondent,  v.  M.  H.
WOODS, Appellant.

**Kansas City Court of Appeals, January 14, 1907.**

SALES: Refusal to Accept: Measure of Damages: Market Value:
Contract Price. W agreed to take from C at a certain time
certain stocks at an agreed price. At the time C tendered the
stock and demanded the price, W refused to accept the stock
or pay the price. *Held*, the measure of damages was the con-
tract price and not the difference between the market value and
the contract price. (Cases distinguished.)

Appeal from Buchanan Circuit Court.—*Hon. Henry M.
Ramey*, Judge.

AFFIRMED.

*John I. Williamson* for appellant; *Rusk & String-
fellow* of counsel.

(1) The court erred to defendant's prejudice in re-
fusing to permit appellant to show the market value of
this stock and the value of the property owned and con-
trolled by the Woods Gold Mining Company.  Bank v.
Ragsdale, 171 Mo. 186; Warren v. Manfg., 161 Mo. 124;
Wall v. Ice and Cold Storage Company, 112 Mo. App.
666; Rickey v. Tenbroeck, 63 Mo. 567.  (2)  Instruc-
tion number one given in behalf of plaintiff is erroneous.
Bank v. Ragsdale, 171 Mo. 186; Warren v. Mfg. Co.,
161 Mo. 124; Wall v. St. Joseph A. I. & C. S. Co., 112 Mo.
App. 666; Rickey v. Tenbroeck, 63 Mo. 567; Fairbanks,
Morse & Co. v. M. & M. Co., 105 Mo. App. 644; Walker v.
Nixon, 65 Mo. App. 326; Vinegar & Spice Co. v. Wehrs,
59 Mo. App. 496; Lumber Co. v. Lumber Co., 51 Mo.
App. 561; Todd v. Gamble, 52 L. R. A., 246; Lumber Co.
v. Warner, 93 Mo. 386; Int. Fair & Ex. Assn. v. Walker,
88 Mich. 87; Rand v. Railroad, 40 N. H. 79.   (3)

Even under the equitable doctrine of specific performance the plaintiff was not entitled in this case to recover the contract price for which he had sold his stock.   2 Thompson's Commentaries on the Law of Corporations, pp. 1962 and 1963; 6 Pomeroy's Equity Jurisprudence (3 Ed.), secs. 752-3; Glass v. Rowe, 103 Mo. 539; Marble Co. v. Ripley, 10 Wall. 339.

*James W. Boyd* for respondent.

(1)   If we deal with the contract in question according to its plain intention, it is simply a contract by which the appellant agrees to repay the respondent the money respondent paid him for his stock and take the stock back.   Howe v. Mittelberg, 96 Mo. App. 493.   (2) The contract sued on is an instrument in writing by which the appellant promised to pay the respondent four thousand dollars if the respondent tendered the stock back and demanded the money.   This is not a simple agreement of sale of goods for a price.   (3)   But if the contract was only an agreement of purchase of goods for a price agreed upon, even then, the vendor would be entitled to recover that sum if he tendered the goods to the vendee and he refused to accept and pay for them.   Lumber Co. v. Lumber Co., 51 Mo. App. 555; Vinegar & Spice Co. v. Wehrs, 59 Mo. App. 493; Dobbins v. Edmonds, 18 Mo. App. 318; Anderson v. Frank, 45 Mo. App. 486.

BROADDUS, P. J.—The plaintiff's suit is founded upon the following written contract, viz.:

"This agreement, made and entered into this, the 14th day of September, 1904, by and between M. H. Woods of Kansas City, Missouri, and Osman B. Campbell of St. Joseph, Missouri,

"Witnesseth:   Whereas, M. H. Woods as a stockholder in the Woods Gold Mining Company, a corporation, and as secretary of said company, is personally interested in consummating a sale of a number of shares

of the capital stock at the price thereof herein mentioned to Osman B. Campbell, and,

"Whereas, said Osman B. Campbell is purchasing capital stock in said company as herein stated, upon, under and in pursuance to the terms, condition and provisions herein contained;

"Now, in the consideration of the purchase of 16,000 shares, fully paid and non-assessable, of the capital stock of the said Woods Gold Mining Company, of a par value of one dollar per share, at and for the price and sum total of four thousand dollars, that is, twenty-five cents per share, which said sum, is here and now paid by Osman B. Campbell.

"Now, therefore, said M. H. Woods hereby agrees and binds himself to said Osman B. Campbell to purchase said capital stock, being 16,000 shares as above stated, of said Osman B. Campbell and to pay to said Campbell therefor, the sum of four thousand dollars, being twenty-five cents per share, at any time within thirty days after the expiration of one year from the date of this agreement; provided, said Campbell within that time, shall desire to sell to said M. H. Woods, said stock and provided said Campbell within said time, offers to him, said M. H. Woods, said stock for said price and demands of him, said M. H. Woods, the payment therefor of said sum of four thousand dollars.

"Witness our hands the day and the year first above stated."

Within one year and thirty days from the date of said contract, the plaintiff Campbell tendered to defendant Woods the said 16,000 shares of stock and demanded from him the said sum of $4,000. Defendant refused to receive the said stock and to pay plaintiff the said sum of $4,000. The defendant offered to show the market value of the stock, which offer was, upon objection of plaintiff, refused by the court. The cause was submitted to a jury

which, after being instructed by the court, rendered a verdict for plaintiff for the said sum of $4,000 and interest, amounting to a total of $4,086.66, upon which judgment was entered and the defendant appealed. The defendant's theory of the law applicable to the case is, that plaintiff was only entitled to recover the difference between the face value of the stock and its market value.

It is held that, "In an action by the vendor against the vendee for the non-acceptance of property sold or contracted for, the measure of damages is usually the difference between the price agreed upon and the market value of the property at the time and place of delivery. In order to give the vendor complete remedy, he must recover the difference between the agreed price and that at which he could sell at the time when the vendee was bound to receive any pay for the thing bought." [Rickey v. Tenbroeck, 63 Mo. 563; Black River Lumber Co. v. Warner, 93 Mo. 374.] In the former case, however, the vendor had resold the property and claimed for the loss sustained on the resale. In the latter case, the court, after calling attention to the different views of courts and law-writers in reference to the law in cases where the goods sold are to be manufactured said: "Where, however, the subject-matter of the contract is a specific article to be manufactured by the vendor for the vendee, and the vendor has completed his contract and performed all that his contract requires him to do, it is but just and fair that his damages, in case of a refusal of the vendee to accept the article, should be the contract price." In Warren v. Mayer Mfg. Co., 161 Mo. 112, the court used the following language: "The general rule is well-established, that on failure of the vendor to deliver the goods according to contract, the ordinary measure of damages is the difference between the contract price and the market value of the goods at the time when, and the place where, they should have been delivered." Under a case of that character, as a matter

of course, it would not be reasonable or just to allow the vendee damages to be measured by the contract price of goods for which he had not paid; otherwise he would be getting something for nothing. And in a similar case the court adopted the same rule. [Koeltz v. Bleckman, 46 Mo. 320.] In First Natl. Bank of Mexico v. Ragsdale, 171 Mo. 168, the facts were that the vendor kept and cared for certain cattle for six months after the date of delivery, as provided by the contract, the vendee having failed to receive and pay for them. The court held that the vendor was not entitled to expense of keeping the cattle for that length of time, nor for loss if the price of the cattle had depreciated on the market; that, if the vendee was guilty of a breach of his contract in failing to take and pay for the cattle, the vendor was only entitled to the difference between the contract price and the market price of the cattle at the date of the breach or, at any rate, within a reasonable time thereafter, at the place designated for the delivery. It does not appear that there was any tender of the cattle by the vendor to the vendee. The court applied the only available rule under the circumstances.

From the cases cited and others to which reference will be had, it will be seen that there is no uniformity in the rule to be applied to such cases. This is owing to the diversity of the circumstances attending different transactions. In Ozark Lumber Co. v. Chicago Lumber Co., 51 Mo. App. 555, this court approved what was said in Dustan v. McAndrew, 44 N. Y. 73: "The vendor of personal property in a suit against the vendee for not taking and paying for the property has choice of either one of three methods of indemnifying himself: First, he may store or retain the property for the vendee, and sue him for the entire purchase price; second, he may sell the property acting as agent of the vendee, and recover the difference between the contract price and the price obtained on such resale; or, third, he may keep the prop-

erty as his own, and recover the difference between the market price at the time and place of delivery and the contract price." GILL, J., who delivered the opinion, stated, that there was some confusion as to the proper measure of damages recoverable by the vendor where the vendee refuses to accept and pay for the goods contracted for, and that "Some hold, as contended for by defendant in the case, that the sole and only damages to be recovered is the difference between the contract price and the market price at the time and place of delivery; while others announce the rule to be that, when the vendor has actually taken all the steps necessary to vest the title of the goods purchased in the vendee, he may sue for the value of the goods, and the rule of damages would be the contract price. And that, where he is ready and willing to perform and offers to do so, but the vendee refuses to receive the goods, the vendor has his right of action on the contract for damages even though the title to the goods is not vested in the vendee. But the damages in the latter case are said to be the difference between the contract price and the price as fixed by the contract of sale." But the court rests its decision on the fact that the lumber was not only sold and delivered, but accepted by the vendee.

The question came up again in the St. Louis Court of Appeals in Crown Vinegar and Spice Co. v. Wehrs, 59 Mo. App. 493. Judge ROMBAUER, who delivered the opinion of the court, takes the same view of the law as was held by this court in Dobbins v. Edmonds, 18 Mo. App. 307. The opinion holds: "If the vendee of personal property wrongfully refuses to receive it on due tender thereof to him, the vendor may set it aside to him and maintain an action for the full purchase price." The opinion reviews the previous opinions of the Appellate and Supreme Courts of this State up to and including the Black River Lumber Co. v. Warner, holding, supra, and shows, we think, that there is noth-

ing in them in contravention to the rule as stated in the opinion. And the opinion urges the most satisfactory reasons in its support, viz.: "It will appear on reflection that this rule is a just one, both to the vendor and vendee. The aim of the law is compensation and a practical way to secure it. To establish the market value of the goods by a resale puts the vendor to additional inconvenience, for which the law gives him no compensation, and very often results in a serious loss to the vendee, particularly in cases where there is no ready market at the place of delivery."

In Dobbins v. Edwards, supra, PHILLIPS, J., said that the weight of authority indicated a preference for the rule, viz., that the vendor sell the property at auction or private sale for the best price he can command, and sue for the recovery of the difference between the price realized and the contract price. However, the opinion states: "The object of the law is to attain as exact justice as is practicable between man and man. It therefore often results, in dealing with a question of this character, that the courts must recognize the peculiar facts and circumstances surrounding each case as it arises. The character and situation of the subject-matter of the property bargained for, as well as the situation of the parties to the contract, must, at times, necessarily enter into and determine which one of the differing methods of exacting damages should be employed."

It is not the purpose of this court to marshal the opinions of the various courts and law-writers and then determine the question according to the preponderance of such authorities. On the contrary, our duty, in order to preserve the harmony of our State adjudications and prevent confusion, is to adhere to the decisions of our appellate courts. We are satisfied that the rule applied by the court in this case is in accord with the former decisions in this State, and, furthermore, that the rule is a just one to both the vendor and the vendee. It is

true that the rule amounts, practically, to specific performance of contracts. But that is no argument against its utility or propriety, but, on the contrary, the best of reasons for its enforcement. The nearer the rules of law can be made to conform to those of equity, the more effective and just will be the judgments of the courts.

Can there be any good reason assigned why the plaintiff's damages should not be assessed at the value fixed by the contract? He comes into court with the capital stock and tenders it to the vendee and asks for the purchase price — no more, no less. His demand is refused by the vendee on the ground that the weight of authority gives him only the difference between the contract price and what it would sell for on the market. Should he accept such as the law, he must go upon the market and sell the stock, and then sue for the difference. After the trouble and expense of selling the property, it devolves upon him to show, not what he realized on the resale, but what was the reasonable market value of the property, which a jury might conclude was more than what he in fact realized. And, as said in Crown Vinegar and Spice Co. v. Wehrs, supra, the rule also protects the vendee in all his rights under the contract. It is safe to say, that where a vendee is so situated that he is in a condition to fully comply with his contract by a tender to the vendee of the property sold and does so, and demands the purchase price, the contract may be said to have been executed, and he is entitled to recover the contract price of the property, upon the refusal of the vendee to accept and pay the same. And such is this case. Affirmed. All concur.