MARIA OEHLER, Respondent, v. CONRAD SCHOPP FRUIT CO., Appellant.

St. Louis Court of Appeals, January 9, 1912.

1. CONTRACTS: Bilateral Contract: Execution in Duplicate. Where a contract for the sale of personalty was executed in duplicate, and one copy was signed by the seller and the other by the buyer, an objection that the contract was unilateral possessed no merit.

2. ———: Construction: Question for Court. It is the duty of the court to construe and declare the legal effect of written contracts.

3. INSTRUCTIONS: Referring to Contract: Harmless Error. Where, in an action on a contract of sale, the terms of a written contract were conceded, an instruction which appeared to submit to the jury, as a question of fact, matter appertaining to the contract was not erroneous.

4. ———: Referring to Petition: Harmless Error. In an action on a contract of sale, an instruction, which, in submitting the contract to the jury, spoke of it "as alleged in the petition," was not erroneous as referring the jury to the petition to ascertain the issues, where the terms of the contract were not disputed and other portions of the. instruction sufficiently hypothesized the facts.

5. SAME: Breach by Vendee: Remedies of Vendor: Measure of Damages. Where a purchaser of chattels breaches the contract and refuses to accept the chattels, the seller may treat the sale as ended by the buyer's default and recover the loss sustained, which is ordinarily the difference between the agreed price and the market price; or he may sell the property for the buyer's account, taking requisite steps to protect the latter's interest and obtain the best price, and then recover the difference between the proceeds of the sale and the agreed price; or he may, if the contract has been so far performed by him, before he has notice of the buyer's intention to refuse to accept, that the property is ready for delivery, treat the property as belonging to the buyer, hold it, after tender, subject to the latter's order, and recover the agreed price.

6. ———: ———: ———: ———. Where there was an actual sale of apples, and the buyer took possession of them, but afterwards left them on the seller's hands and refused to receive or pay for them, the seller was entitled to retain them, subject to the buyer's order, and recover the agreed price, less the cost of picking and hauling them to the place he had agreed to deliver them.

7. ———: ———: ———: ———: Tender: Waiver. Where a contract of sale of apples required the seller to transport them to railroad cars, but the buyer positively refused to receive them, if delivered, it was not necessary for the seller to transport them, to the cars, in order to complete a tender.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*Kinealy & Kinealy* for appellant.

(1) The document filed as an exhibit to the petition and read in evidence is no contract. As plaintiff sues for breach of a contract she must prove a contract between herself and defendant, and as she failed to do this the instructions asked by defendant to the effect that she could not recover should have been given. Const. Co. v. Iron Works, 169 Mo. 137; Cole v. Armour, 154 Mo. 333; Const. Co. v. Wrecking Co., 137 Mo. App. 392; Taylor v. Sebastian, 138 S. W. 549. (2) Plaintiff's first instruction is erroneous because it is the duty of the court and not the jury to construe a writing alleged to constitute a contract between the parties. State v. Brown, 171 Mo. 477; Ford v. Dyer, 148 Mo. 528; Comfort v. Ballingal, 134 Mo. 281; Chapman v. Railroad, 114 Mo. 542; Rodgers v. Bro. of Am., 131 Mo. App. 353. Also because it refers the jury to the pleadings to ascertain the issues on trial. Masterson v. Transit Co., 204 Mo. 507; Jordan v. Transit Co., 202 Mo. 418; Glasgow v. Railroad, 191 Mo. 347; Railroad v. McGrew, 104 Mo. 282. (3) Plaintiff's second instruction, on the measure of damages, is erroneous: (a) Because it proceeds on a wrong theory. For breach of contract to accept personal property the measure of damages is the difference between the contract price and the market value. B. & N. Co. v. Car Co., 210 Mo. 715; Bank v. Ragsdale, 171 Mo. 168; Warren v. Mfg. Co., 161 Mo. 113; Lumber Co. v. Warner, 93 Mo. 374; Range Co. v. Mercantile Co., 120 Mo. App. 438. (b) Because it takes no heed of what plaintiff realized out of the alleged rejected apples by drying and evaporating them. Instructions must not ignore potent evidence. Bank v. Powers, 102 Mo. App. 415; Herf v. Lackawanna Line, 85 Mo. App. 667. (c) Because there was no evidence as to the number of hundredweight of the specified sized apples plaintiff claims the defendant rejected. Instructions must have

evidence to support them. Crowe v. Railroad, 212 Mo. 589; Stetzler v. Railroad, 210 Mo. 704; State v. Edwards, 203 Mo. 528; Paddock v. Somes, 102 Mo. 226. (d) The petition alleges plaintiff had $810 worth of good apples left in her orchard. She therefore suffered no damages and the instruction for substantial damages had nothing to base it on. (4) The court's modification of defendant's instruction was erroneous because under the contract pleaded by plaintiff defendant had the right to refuse to accept the apples in the orchard since the contract required plaintiff to load them on the cars. Plaintiff had to recover on the contract alleged in her petition or not at all. Const. Co. v. Iron Works, 169 Mo. 137; Cole v. Armour, 154 Mo. 333; Const. Co. v. Wrecking Co., 137 Mo. App. 392; Taylor v. Sebastian, 138 S. W. 549.

*S. C. Rogers* for respondent.

(1) Plaintiff proved by her contract with defendant as fully as the petition, contract and the law requires. (2) Plaintiff's first instruction was correct. It was taken from and approved in Harding v. Nettleton, 86 Mo. 660; McQuillin's Instructions to Juries, section 1695, page 969; Campbell v. Woods, 122 Mo. App. 726; Kain v. Railroad, 29 Mo. App. 62; State v. Richmond, 186 Mo. 78. (3) Plaintiff's second instruction properly declares the measure of damages. Vinegar & Spice Co. v. Wehrs, 59 Mo. App. 493; Campbell v. Woods, 122 Mo. App. 719; Range Co. v. Mercantile Co., 120 Mo. App. 438; Walker v. Nixon, 65 Mo. App. 326; Lumber Co. v. Lumber Co., 51 Mo. App. 555; Dobbins v. Edmonds, 18 Mo. App. 307; Hammond v. Darlington, 109 Mo. App. 342. Defendant should have asked instructions on the measure of damages. Minter v. Bradstreet Co., 174 Mo. 490; McQuillin's Inst. to Juries, secs. 129-132, pp. 99-101.

(4)  The court properly modified defendant's instruction.  Plaintiff did all she was required to do.  Ober v. Carson, 62 Mo. 209; Groffe v. Belche, 62 Mo. 400; Kaes v. Lime Co., 71 Mo. App. 101; Campbell v. Woods, 122 Mo. App. 719.

NORTONI, J.—This is a suit for damages accrued to plaintiff through the breach of a contract of sale of personal property.  Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff owned two orchards in Wayne county, Illinois, and sold such of the apples therein as were sound and as much as two and one-half inches in diameter and over to defendant for the agreed price of forty cents per hundredweight or twenty cents a bushel.  Defendant accepted a portion of the apples but the remainder it rejected, and the suit proceeds for the purchase price as though the apples rejected by defendant were sound and in every respect conformed to the requirements specified in the contract.  The contract of sale is in writing and recites that plaintiff sold all of the sound apples two and one-half inches in size and up, now in her two orchards in Wayne county, Illinois, to defendant.  The price fixed thereby is forty cents per hundredweight.  On the day the contract was entered into, October 4, 1906, defendant paid plaintiff $200 in cash thereon and by the provisions of the contract stipulated to pay the balance as soon as the apples were delivered on board the cars at Keen station, Illinois.  It is provided in the contract that defendant was to furnish a man to oversee the picking of the apples and loading of the cars and to pack such of the apples in the orchard as it saw fit to pack there before loading on the cars.  Plaintiff agreed to pick the apples and to deliver them on the cars at Keen station.  It appears plaintiff had about 3500 apple trees in her two orchards and that they were laden with from two to five bushels of apples to the tree.

Defendant sent its man to plaintiff's orchard to take charge and oversee the picking and packing of the apples and he remained there for several days, but rejected almost all of the apples as being insufficient in point of quality and size. Having accepted a few hundred bushels, which were loaded on the cars by plaintiff at Keen station, defendant's overseer rejected the balance of the apples tendered by plaintiff, and proceeded to buy elsewhere in the neighborhood, it is said, at fifteen cents per bushel. It appears plaintiff had about 10,000 bushels of apples on the trees in her two orchards at the time, and according to her evidence and the witnesses for her, several thousand bushels of these apples were as much as, or more than, two and one-half inches in diameter and perfectly sound. These were all tendered to defendant, and its supervisor, Ferrera, took possession of the whole, but some ten days or two weeks thereafter rejected them, saying the apples were affected with the dry rot, etc. The evidence for defendant tends to prove that it accepted all of plaintiff's apples tendered to it, which were two and one-half inches in size and sound, and rejected those only which were under size and unsound. From this, it appears that the only issue of fact involved at the trial was as to whether plaintiff tendered to defendant "sound apples two and one-half inches in size and up," which it refused to receive. On this question, the jury found the issue for plaintiff as though she had tendered a large quantity of such apples, which defendant rejected, amounting in all to $810.

It is urged the court should have directed a verdict for defendant because the written contract of sale annexed to the petition and introduced in evidence appears to be unilateral, as it is signed by defendant alone. It is sufficient to say of this that the proof shows the writing was executed in duplicate copies, each of which was in the precise language of the other. One

copy of the contract was signed by defendant and delivered to plaintiff, the other copy was signed at the same time by plaintiff and delivered to defendant. In instituting the suit, plaintiff, of course, filed that copy of the contract of sale with her petition which was in her possession and that is the one signed by defendant. But, be this as it may, as the two papers were identical in all respects as to the terms of the contract and executed at the same time as above set forth, they evidenced but one contract, all of which was in writing, and this, too, signed and executed by both parties. So considered together, the contract of sale imposes mutuality of obligation on a valid consideration and is, therefore, not unilateral. [1 Page on Contracts, sec. 17.]

By the first few lines of plaintiff's first instruction, the court informed the jury that if it found from the evidence that plaintiff sold defendant all of the sound apples in her two orchards, two and one-half inches in size and up, at forty cents per hundredweight, etc., then if it found other facts therein hypothesized, in the affirmative, etc., the verdict might be for plaintiff. So much of the instruction as seems to submit to the jury as a question of fact the matter pertaining to the contract of sale is criticized, for it is said as the contract was in writing, the court alone should construe and declare it. There can be no doubt that it is the duty of the court to construe and declare the legal effect of written contracts, and they should not, when clear and unambiguous, as here, be referred to the jury; but be this as it may, the matter of submitting the contract to the jury is wholly immaterial here and does not even suggest a suspicion of error. The contract of sale is conceded throughout the case. Defendant neither denies nor disputes it. Indeed, both parties agree precisely and in all respects as to its terms and conditions, and the mere fact that the instruction permitted the jury to find as a fact that

which the parties both concede to be true should not be seriously considered on the suggestion of error in a court of review.

This same instruction is criticized because, in so submitting the contract to the jury, it speaks of the same "as alleged in the petition." It is said the instruction thus erroneously points the jury to the petition to ascertain the issue. It is to be conceded that the jury should be informed of the issues in the case through the medium of the instructions and not by reference to the petition, but the principle is without influence here, for as to the contract, no issue appears. Of the argument here put forward, it may be said, as above, that the contract in all its terms is conceded to have been one of sale, whereby plaintiff sold all of the sound apples, two and one-half inches in size and up in her two orchards, to defendant at forty cents per hundredweight. This is the contract alleged in the petition to which the instruction referred, and it is the contract both proved and conceded on the trial. In such circumstances, it is obvious that the instruction is not obnoxious to the charge of referring the jury to the pleadings to ascertain the issuable facts in controversy between the parties. The instruction under consideration in subsequent portions thereof hypothesizes and requires the jury to find all of the relevant facts essential to plaintiff's right of recovery and the mere reference to the petition therein should be regarded as surplusage only. [See Kain v. Kansas City, etc. Ry. Co., 29 Mo. App. 53, 62, 63.]

The important question in the case relates to the measure of damages, for plaintiff recovered the full contract price for all of the sound apples then in her orchard, which were as much as, and above, two and one-half inches in size, after deducting therefrom the expense of picking the apples and hauling them to the car at Keen station. By an instruction given at plaintiff's request on the measure of damages, the court au-

thorized a recovery at the contract price for all of such sound apples in her orchard two and one-half inches in size and up, which were sold and tendered to defendant and which defendant refused to accept and prevented plaintiff from delivering—that is, after deducting the expense of picking and hauling. It is argued this instruction was error and that the true measure of damages is the difference between the contract price and the market price of the apples at the time. Such is the measure of recovery usually employed in suits by the vendor against the vendee who has breached the contract of sale, for, in the majority of cases, the property bargained for and so left in the hands of the vendor possesses the market value to him, and, consequently, the true measure of his loss is the difference between such market value and the contract price, if such is more than the market value. Where the vendor retains the property as his own after the breach and it possesses a market value, the rule referred to is frequently applied as a just one. [See St. Louis Range Co. v. Kline, etc. Merc. Co., 120 Mo. App. 438, 96 S. W. 1040. See also 2 Sedgwick on Damages (8 Ed.), sec. 753.] But such is not the only measure of damages which the law affords to a vendor against the vendee who has breached a contract of sale and refused to accept the goods sold. In such circumstances, it is competent, too, for the vendor, after the breach, to sell the goods to another and recover from the defaulting vendee the difference between the price realized from such re-sale and the price enjoined upon the original vendee by the contract of sale, if the price from the re-sale was less than the original contract price. Such was the course pursued and determined to be a proper one in Rickey v. Tenbroeck, 63 Mo. 563. [See also Sedgwick on Damages (8 Ed.), sec. 753.] Another remedy which the law affords a vendor against a vendee who has breached his contract and refused to accept the goods purchased in some cases

is that the vendor may, after tender and refusal, store or retain the property for the vendee and sue him for the entire purchase price. Such was the course pursued and determined to be a proper one in the following cases: Crown Vinegar, etc. Co. v. Wehrs, 59 Mo. App. 493; Black River Lumber Co. v. Warner, 93 Mo. 374, 6 S. W. 210; Dobbins v. Edmonds, 18 Mo. App. 307; Ozark Lumber Co. v. Chicago Lumber Co., 51 Mo. App. 555; Walker v. Nixon, 65 Mo. App. 326; Koenig v. Truscott Boat Co., 155 Mo. App. 685, 135 S. W. 514; Campbell v. Woods, 122 Mo. App. 719, 99 S. W. 468; Pearson v. Mason, 120 Mass. 53.

From what has been said, it appears that the law allows the seller three several modes of redress when the vendee has breached the contract of sale and refused to accept the goods contracted for. In the order above named, the vendor may first treat the sale as ended by the buyer's default or refusal to accept the goods and the property as his (the seller's) and recover the actual loss sustained, which is ordinarily the difference between the agreed price and the market price; or, second, the vendor may sell the property for the buyer's account as his agent, taking the requisite steps to protect the latter's interest and obtain the best price available, and then recover the difference between the proceeds of the sale and the agreed price; or, third, the vendor may, if the contract has been so far performed by him that the property is ready for delivery before he has notice of the buyer's intention to decline acceptance, treat the property as belonging to the buyer, hold it after tender, subject to the latter's order, and recover the full agreed price. [See St. Louis Range Co. v. Kline, etc. Merc. Co., 120 Mo. App. 438, 96 S. W. 1040; Dobbins v. Edmonds, 18 Mo. App. 307, 317; Kingsland v. Iron Co., 29 Mo. App. 526; Lumber Co. v. Lumber Co., 51 Mo. App. 555; Sedgwick on Damages (8 Ed.), secs. 750, 751, 752, 753; Koenig v. Truscott Boat Co., 155 Mo. App. 685, 135 S.

W. 514.] The several remedies above adverted to are
invoked in different cases as the acts and circum-
stances of each may require. But the third and last
rule for the admeasurement of damages, and that
which was applied by the court in this case, we believe
was originally properly limited to those cases where
the article purchased had been in some manner made,
manufactured or created by the vendor for the vendee
and duly tendered and the title thereto regarded by
the courts as having constructively passed or where the
title to the article sold in fact passed to the vendee
by the contract of purchase and sale, or the course of
conduct between the parties. In Black River Lumber
Co. v. Warner, 93 Mo. 374, 6 S. W. 210, our Supreme
Court considered the cases and applied the rule to the
facts there in judgment, which involved the sale of a
lot of lumber of particular sizes and dimensions cut
to suit the vendee. But though the court did not re-
pudiate the rule in the fullest measure of its applica-
tion, it, nevertheless, spoke charily on the subject and
said it was not "prepared to say it should be applied
in cases of sales of ordinary goods, wares and mer-
chandise." Furthermore, the court in that case em-
ployed language suggesting that it thought the rule
might be a disastrous one to the vendee in some in-
stances. Besides the case referred to, the following
cases in this court affirm the doctrine as a proper one
for the admeasurement of damages where it appears
the property sold was manufactured by the vendor
for the vendee. In such circumstances, the rule is
obviously a just one, because the vendee should be
required to accept or pay the price for that which he
has induced the vendor to create for him, and espec-
ially is this true where the article is not one of ordi-
nary merchandise or other subject of frequent and
ready sale but instead is one of a peculiar brand, qual-
ity or character, suited to the purposes of the partic-
ular vendee. In Walker v. Nixon, 65 Mo. App. 326,

the subject-matter involved was the sale of a suit of clothes, a dress suit, manufactured for the vendee. No one can doubt the rule as entirely just when applied to the facts of such a case. The same may be said with respect to the more recent case of Koenig v. Truscott Boat Co., 155 Mo. App. 685, 135 S. W. 514, for the article there involved was a boat, sold and manufactured in accord with a special design for the vendee. So, too, in Kingsland v. St. Louis, etc. Iron Co., 29 Mo. App. 526, the subject-matter of the sale was manufactured by the vendor for the vendee. Though the rule was not applied in the recent case of St. Louis Range Co. v. Kline, etc. Merc. Co., 120 Mo. App. 438, 96 S. W. 1040, it was considered and discussed by an able and discriminating judge and the opinion reflects the thought that it should be applied only in those cases where the title to the property has either constructively passed, as in the case of a manufactured article, or the title has actually passed by the contract and conduct of the parties. It also appears that such is the view of Mr. Sedgwick, as expressed in his valuable work on damages. [See secs. 750, 751, 752, 753 (8 Ed.).] But other cases of both this court and the Kansas City Court of Appeals seem to have accepted the doctrine in its broadest scope, and this, too, notwithstanding the chary language employed by Judge BLACK in Black River Lumber Co. v. Warner, supra. In Crown Vinegar, etc. Co. v. Wehrs, 59 Mo. App. 493, this court considered the question and reviewed the authorities in an opinion by Judge ROMBAUER, and expressly considered as well the suggestion of our Supreme Court on the rule as expressed by Judge BLACK in Lumber Co. v. Warner, supra. The subject-matter of the sale considered by Judge ROMBAUER was twenty-five barrels of vinegar, which, of course, is an article of merchandise salable in market overt and was in no sense manufactured for the particular vendee. The vendee having refused to accept

the vinegar when tendered, the vendor retained it for him and sued for the purchase price. The court affirmed the rule as a proper one on those facts. In Ozark Lumber Co. v. Chicago Lumber Co., 51 Mo. App. 555, the Kansas City Court of Appeals considered and applied the doctrine as a proper one to measure the damages in a case involving the sale of a carload of lumber, which, of course, is a staple article in the market, for it does not appear that the particular lumber was cut especially or manufactured for the vendee. The same court in the more recent case of Campbell v. Woods, 122 Mo. App. 719, 99 S. W. 468, reviewed the authorities and applied the doctrine as a proper one to the sale of some shares of stock in a corporation, upon it appearing the vendor had duly tendered the stock to the vendee and demanded the purchase price. So, too, has the Supreme Court of Massachusetts applied the rule to the same effect in Pearson v. Mason, 120 Mass. 53.

It would seem, from the authorities reviewed, that the rule is not confined, at least in this jurisdiction, to the case of a manufactured article alone, where the title is regarded as having constructively passed, nor to those where the title has passed in fact by actual delivery of possession. Instead, the doctrine is invoked and applied where it appears an actual sale has occurred and the property is tendered in accordance with the terms of the contract or the tender is rendered unavailable by the positive refusal of the vendee to receive the goods. In the case before us, it is conclusively shown that there was an actual sale to defendant of all of plaintiff's apples contained in the two orchards, which were as much as two and one-half inches in diameter, or above that size. This fact is conceded throughout and it appears, too, that defendant went into possession of the orchard through its agent, Ferrera, and retained such possession for several days. That defendant was thus given possession of all of such apples in the two orchards is not

denied. The entire fruitage thereof, of the sizes and quality mentioned, was not only tendered, but actually delivered, to defendant in the orchard, and plaintiff stood ready and willing at all times to comply with the contract by hauling the apples to the car at Keen station. Some of the apples she hauled and delivered there, and payment was duly made for a portion of these, while a large number of sacks were rejected, though it appears from the proof they were sound and conformed to the contract in every respect. Plaintiff tendered a delivery of all the sound apples that conformed to the contract, to defendant, but it positively refused to receive them if delivered, and such being true, the actual hauling of the apples to the cars in order to complete a tender there was waived, for the law will not require the doing of a useless act. [See Black River Lumber Co. v. Warner, 93 Mo. 374, 6 S. W. 210.] It appears that there was an actual sale of the apples to defendant and a proper tender thereof at the time and place contemplated, except for its refusal. It was competent for plaintiff to retain the apples in her possession for defendant and recover the purchase price, as she did, less the expense of picking and hauling the same to the car. And this was the rule of damages which the court gave the jury.

But it is said the instruction on the measure of damages was erroneous for the reason it appears defendant used the identical apples and converted them to her own use thereafter. If such were the fact, of course, the rule of compensation would be the difference between the market value of such apples as plaintiff used and the contract price. But there is no proof in the record to support this argument. It is true one witness says plaintiff built an evaporator in her orchard for the purpose of drying or evaporating these apples, but the same witness says, too, that he helped build the evaporator and "I only know about my business"—that is, he knew nothing of plaintiff's having

used these apples in the evaporator. Plaintiff herself said she evaporated apples until in January. But the proof is overwhelming that she had several thousand bushels of apples on her hands which were unsalable because of their being under size, and we have been unable to discover any evidence that she used any of the apples which were sold to defendant. Indeed, there seems to have been no effort to prove this on the trial, and the matter relied upon now is a mere scrap of testimony which fell from the lips of a man who helped build an evaporator and who explained, too, that he knew nothing whatever about the matter, only that he assisted in building an evaporator in the orchard.

We see no error in the modification by the court of defendant's instruction touched upon in the brief, and the matter will not be further noticed. The opinion is now unduly extended. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.